## STEWART V. STEVENS.

1. Grants of estate and easements of land are, by the statute of frauds, to be evidenced by properly executed and authenticated written instruments, and, except in cases of fraud on the part of the land owner, are not to be otherwise created.

2. The damage to support an estoppel against the owner of an estate and convert him into a trustee must be something more substantial than what would technically amount to a consideration in a contract. It must be of such a character that the person sustaining it cannot be put back into his former condition, and cannot be adequately compensated by pecuniary damages.

3. A contract was made between several parties, among them plaintiff and defendant, by which they agreed to form a company and dig a ditch across specified lands, to be dug and sustained by the parties to the contract in proportion to the lands benefited. The company was afterwards dissolved before the ditch was dug. *Held,* that this agreement did not give an individual member of the company, after the dissolution of the latter, a right to dig a ditch across another individual member's land.

4. If it is conceded that such agreement gave such right as to lands described, it could not give the right as to lands owned by a member, but not described.

*Appeal from District Court, Douglass County.*

Mr. J. W. HORNER, for appellant.

Mr. C. C. HOLBROOK, for appellee.

Macon, C.   This suit was instituted by appellant, Izett Stewart, against appellee, Lewis G. Stevens, to restrain him from building a ditch upon and through certain lands of the former.   A preliminary injunction was issued against appellee, but upon the final hearing it was dissolved and the suit dismissed.   Complainant claimed title, dating back to 1871, to the south half of the southwest quarter of section 23, township 8, range 68, in Douglass county, Colorado, and title from 1875 to the southwest quarter of the northeast quarter, and the southeast quarter of the northwest quarter, the northeast quarter of the southwest quarter, and the northwest quarter of the southeast quarter in the same section, township and range, the latter acquired from one John Jones; and that without right or consent of plaintiff, defendant threatened and was about to enter ·upon said premises and dig and excavate a large ditch; with other averments showing irreparable injury, and praying an injunction to restrain the alleged wrong.   The preliminary injunction was allowed May 20, 1880.   On August 10, 1880, defendant answered, admitting his purpose to enter upon the lands of plaintiff for the purpose of building the ditch thereupon, but alleged the grant of right of way from the plaintiff by deed dated April 12, 1872, which deed is in the words and figures following:

"Article of agreement, made and entered into this 12th day of April, A. D. 1872, between John Thomas, Albion Smith, Izett Stewart, John Lindsay and Lewis G. Stevens, all residing at West Plumb Creek, in the county of Douglass, and the territory of Colorado.   Whereas, we, the said John Thomas, Albion Smith, Izett Stewart, John Lindsay and Lewis G. Stevens, do hereby mutually and severally agree to construct a ditch not less than two feet or more than four feet in width, to run through the several lands and farms as herein mentioned: John Thomas, south half of northwest quarter, section 26, town 8 south, range 68 west; Albion Smith, north half

of northwest quarter, said section 26; Izett Stewart, south half of southwest quarter, section 23, said town 8; John Lindsay, north half of southwest quarter, and south half of northwest quarter, and southwest quarter of northeast quarter, said section 23; Lewis Stevens, southwest quarter of southeast quarter, section 14, said town 8. We also jointly and severally agree to bear our proportion of outlay and labor necessary for the completion and repairs of the said ditch, the same to be proportioned and regulated according to quantity of water required, and do hereby agree upon, namely: John Thomas' supply of water to be sufficient to irrigate ten acres of pasture land or equal thereto; Albion Smith's, ten acres; Izett Stewart's, twenty acres; John Lindsay's, sixty acres; Lewis G. Stevens', two hundred acres,— whenever a sufficient supply of water can be obtained; but whenever a deficiency of water, each one herein named, his heirs, executors, or successors, shall be entitled to his or their adequate proportion. The said ditch to be commenced on Upton J. Smith's land, southwest quarter of section 26, town 8 south, of range 68 west, and to be continued to Lewis G. Stevens' land, southwest quarter of southeast quarter of section 14, said town 8; management to be regulated by shares; ten acres to be considered one share. In testimony whereof, the parties hereto this and one other instrument of the same tenor and date, interchangeably set their hands and seals, this 12th day of April, 1872.

| [Signed] | " JOHN THOMAS. | [SEAL.] |
| | " ALBION SMITH. | [SEAL.] |
| | " IZETT STEWART. | [SEAL.] |
| | " JOHN LINDSAY. | [SEAL.] |
| | " LEWIS G. STEVENS." | [SEAL.] |

And by virtue of an oral agreement and understanding between the parties to said deed, prior to the execution of the same; the allegation as to which is as follows: "That it was understood and agreed by and between such plaintiff and defendant and said other named per-

sons that each and all of said persons, including said plaintiff, were to grant unto each other a right of way for said ditch through their respective lands, and that said plaintiff was to grant to said defendant a right of way for said ditch through his, said plaintiff's, land. That thereupon, in furtherance of said agreement, and in consideration of the benefit to be derived by each of said parties from the use of said ditch, a certain writing was made, executed, acknowledged and delivered by and between the parties aforesaid." Plaintiff's title to the land described in his complaint is not denied, but it is averred in the answer that defendant does not intend to enter upon any of the land of plaintiff except that included in his grant of the right of way, as found in the deed and oral agreement. Plaintiff filed his replication, and denied the oral agreement charged, and that the land through which defendant proposed to run the ditch in part was the same land described in the deed. The final hearing of the case came on in December, 1883, when the court dissolved the injunction, and dismissed the plaintiff's bill; from which decree plaintiff appealed to this court, and assigns ten errors in the ruling of the court.

In our view of the case, it is not necessary or material to examine any of the assignments except the third and fourth. The third is that "the court erred in holding that the paper marked 'Exhibit E' entitled the defendant to build the ditch therein mentioned through land owned by the plaintiff and that acquired by the plaintiff after the execution of said paper marked 'Exhibit E,' and never owned by any of the parties to said agreement until acquired by the plaintiff." It is obvious that, if it be conceded that the written agreement of April 12, 1872, amounts to a grant of the right of way for the ditch over and into lands therein described, it cannot be so extended as to embrace other lands not described therein, and to which the parties thereto had then no title. And by the testimony of the appellee himself, it is seen that the sur-

veyed route of the ditch which he proposes to follow, if permitted to go on with the enterprise, passes over and through the northeast quarter of the southwest quarter, the southeast quarter of the northwest quarter, and the southwest quarter of the northeast quarter of section 23, being a distance, as described by him, of at least three-quarters of a mile, none of which land was the property of appellant in 1872, nor of any one of the parties to this agreement, but was, so far as the record discloses, the property of one John Jones, appellant's grantor. It is true, the written agreement describes the north half of the southwest quarter of said section, which includes the northeast quarter of the southwest quarter of said section, as the property of John Lindsay; but there is no evidence to support such claim, and as the burden of showing that such land was the property of said Lindsay on April 12, 1872, was upon the appellee, we must hold that, in the absence of such proof, the land was not Lindsay's when he signed said agreement. Hence the dissolution of the injunction, so far as it applied to these tracts of land last described, should not have been ordered, unless there was some other ground therefor *dehors* this agreement.

It is insisted by appellee that inasmuch as appellant remained silent from 1872 to 1880, while appellee continued the work on the ditch from 1873 to and including 1875, and bought and procured some lumber and timber for the ditch after 1875, he is estopped to dispute appellee's right of way through the land not described in the deed, as well as that described therein. The cases cited in support of this contention by appellee are not in point; the facts in this case failing to bring it within any of the rules enforced in those cases. In the first place, the deed which created the company, if it created any obligation upon the parties thereto, *was an obligation to the company* as a company, and not to the members thereof as individuals. The enterprise was to be a joint enterprise, and not an individual one. It is not necessary to

say what would have been the effect of the company's prosecuting the work and meeting with opposition on the part of appellant; because it is shown by both appellee and Hill, his witness, that every member of the company except appellee abandoned the enterprise after 1872, and declined to proceed further in it. From that time to 1880 appellee proceeded with the ditch alone, and, while he says he was working for all, he fails to show that he had any authority to do so. He could not have bound the company for anything done by him without its authority, express or implied. He shows no express authority, and the idea of an implied one is clearly negatived by the fact of abandonment of the work by all the other members as early as 1873. If, then, the company did not wish to go further in the work, and declined so to do, no promise by or conduct of appellant towards the company in 1872 would bind him after the abandonment of the work and the dissolution of the company. If he was not bound to the company after that time, it is clear he could not be to appellee, because the latter did not succeed to any rights of the company by assignment, succession or otherwise. In his prosecution of the work, then, appellee was acting solely on his own behalf, and in doing so the silence of appellant can give him no right whatever. A land owner may be aware that a railroad company has surveyed the route for a railroad over his land, and has expended large sums of money in grading up to his line, intending to enter his premises and build its road; but he may with impunity remain silent until the attempt is made to enter upon his land, and prevent such attempt by injunction. It would be an anomalous defense on the part of the railroad company that, by his silence, while he saw its survey across his land, and the great expenditures made in grading to his line, he should be estopped to assert his right to protect himself against invasion. The case of appellee on the facts is not stronger. The case of *Yonker v. Nicholls*, 1 Colo. 551,

is not in point, for the reason that since that case was decided we have formed a constitution which prohibits the taking of private property for private use without compensation; and the legislature has provided the proceedings by which, upon the payment of just compensation, private property may be subjected to private use. *Tripp v. Overocker*, 7 Colo. 72.

The record plainly discloses the further fact that appellee could not have been ignorant of the abandonment of the enterprise by appellant long prior to 1880. In his testimony he says: "That part of the ditch which had been built on the land claimed as Lindsay's, which was the northeast quarter of the southwest quarter of section 23, had been filled up by appellant before the year 1878;" which conduct was more clearly a dissent from and an objection to the further prosecution of the ditch enterprise than could have been made by oral declaration. Besides, appellant swears that he knew of no work done by appellee after 1872, and he is not contradicted on this point. Without knowledge on his part, silence would have no effect to estop him. Bigelow, Estop. 437.

Appellee relies further upon the alleged conversation between himself and appellant in March, 1880, in which the latter said he believed the water would not run through the ditch; that he would do no more work upon it until he was satisfied to the contrary, but that he would not oppose appellee's working on it, and to go ahead with it; relying upon which statement, appellee avers he proceeded with the work on the ditch, and performed one hundred and fifty-four days' labor thereon. This conversation is denied specifically by appellant; but, if it be admitted in its full meaning, it does not imply even a legal grant of right of way across appellant's land without compensation. Grants of estate and easements of land are by the statute of frauds to be evidenced by properly executed and authenticated written instruments,

and, except in cases of fraud on the part of the land owner, are not to be otherwise created. To allow loose and indefinite conversations, such as are relied on, to stand in lieu of the deed of conveyance, is a virtual repeal of the statute of frauds, which we are not inclined to favor. It is quite easy to find the meaning in the language, imputed to appellant, entirely consistent with his intention to exact compensation for the injury to his premises, which would result from the construction of the ditch.

Estoppels *in pais* are the creations of courts of equity, invented to prevent irreparable injury to a party who has been led into a course of conduct in reliance upon the representations of another, which it is inequitable to allow that other to retract; but these rules of equity are not resorted to if other rules of law can be invoked for the relief of the sufferer. Without intending to decide the question here, it is very doubtful if a right will ever be enforced against a party upon the ground of equitable estoppel, where the party claiming the benefit of it can enforce such right under a statutory power independent of estoppel. Here appellee could have condemned the land required for his ditch, and have secured the title thereto by payment of the compensation assessed by the appraisers. It is said in *East v. Dolihite*, 72 N. C. 567, that "the damage to support an estoppel against the owner of an estate, and convert him into a trustee, must be something more substantial than what would technically amount to a consideration in a contract. It must be a substantial one, and of such a character that the person sustaining it cannot be put back in his former condition, and cannot be adequately compensated by pecuniary damages."

Upon the facts of the case, it seems that this litigation is waged for no other purpose on the part of appellant than to compel appellee to pay for the right of way, and on the part of appellee to avoid such payment. If, however, it

were conceded that appellant intended to be understood as promising to dedicate the right of way to appellee from this conversation of March, 1880, according to the authority of *Brightman v. Hicks*, 108 Mass. 248, an estoppel would not arise upon it. In that case Gray, J., says: "A promise upon which the statute of frauds declares that no action shall be maintained cannot be made effectual by estoppel merely because it has been acted upon by the promisee and not performed by the promisor." We find no element of estoppel in the facts of the case.

The fourth assignment of error goes to the legal effect of the deed as a grant of right of way over the south half of the southwest quarter of section 23, township 8, range 68. This instrument is claimed by appellee to be a deed granting the right of way over and through the lands described therein, and upon that construction claimed the right he was attempting to exercise. This instrument contains no words of grant. It purports to be an agreement for a partnership for a single enterprise, in which the relative rights and duties of each partner are specified and protected, and nothing more. The fact that the lands through which the ditch was to be built are described therein as nothing more than a loose and indefinite designation of the route to be pursued, limited only by the boundaries of the several tracts of land mentioned. We find nothing in the so-called deed to warrant the conclusion that any party thereto designed to grant, free of cost, to the company the right of way over his land, and therefore cannot accept the view entertained and pressed by appellee. But if it showed a complete and perfect conveyance of the right of way over the lands described, as we have stated above, *the company* took the grant *in solido*, and not the individual members, and appellee has not shown himself entitled to these rights. The company dissolved in 1873, and positively refused to prosecute the enterprise further, and each of them made other ditches through which to flow water

upon their lands.    Upon this dissolution, without transferring its property or franchises to any other person, its rights, whatever they might have been under this deed, were extinguished.    It necessarily follows that the court erred in dissolving the injunction, and that the decree should be reversed, and the cause remanded with direction to re-instate the injunction; but appellee may proceed under the condemnation statutes.

We concur:   STALLCUP, C.; RISING, C.

BY THE COURT.    For the reasons assigned in the foregoing opinion the judgment of the district court is reversed and the cause remanded, with directions to the said district court to re-instate the injunction.    The appellee may proceed under the condemnation statute if he be so advised.

*Reversed.*