# CASES AT LAW AND IN CHANCERY

DETERMINED IN THE

# SUPREME COURT OF THE STATE OF COLORADO.

## JANUARY TERM, 1890.

### VON TROTHA ET AL. V. BAMBERGER.

1. STATUTE OF FRAUDS — PROFITS IN REALTY.— A verbal agreement to share the profits arising from the purchase and sale of real estate may be made independent of any contract for an interest in the land itself. When so made, the agreement is not within the statute of frauds, and may become the foundation of an action for a money judgment, but not for a decree of specific performance affecting the title to the real estate.

2. SAME — EXPRESS TRUST.— In jurisdictions having a statute of frauds like ours, the general rule is that the existence of a direct or express trust cannot be established by parol evidence.

3. SAME — TRUST BY OPERATION OF LAW.— When the legal title to land has been acquired in pursuance of a verbal agreement to hold the same in trust for a specified purpose, the agreement cannot be upheld as an express trust; but, if it be clearly established that the title has been fraudulently acquired, and is still held in fraud of the rights of another having a valuable interest in the premises, a trust by operation of law may be declared upon equitable terms.

4. SAME — PAROL EVIDENCE.— Parol evidence is admissible to prove facts from which a trust by implication of law may arise, but such evidence is not competent to prove an express trust, where the statute of frauds is relied on as an objection.

VOL. 15 — 1

5. SAME — PLEADINGS.— Averments in pleadings in avoidance of the statute of frauds must not only be direct and positive, but they must be clear and unequivocal, or they will not be regarded as sufficient, either in form or substance.

6. SAME — TRUST EX MALEFICIO.— Where the statute of frauds prevails, a mere oral promise to reduce to writing a verbal agreement declaring a trust in land, and the breach thereof, are not admissible to establish such trust, except in connection with other evidence tending to show fraudulent conduct in the acquisition of the title by the party holding it; but, when the existence of fraud is thus shown, equity will declare the party thus acquiring and holding the title a trustee *ex maleficio* upon the terms of the dishonored verbal agreement, or other equitable terms, for the benefit of a person having a subsisting valuable interest in the premises.

7. SAME — PART PERFORMANCE.— Acts of part performance, such as will furnish a foundation for enforcing a verbal contract respecting land otherwise void under the statute of frauds, must be such as are done in pursuance, or according to the terms, of the contract, and which in some manner affect or change the relation of the parties in respect to the property, whereby one of the parties would be defrauded if the contract were not enforced.

8. SAME — POSSESSION — IMPROVEMENTS.— Actual possession in furtherance of the terms of the contract, especially when accompanied by the making of permanent and valuable improvements upon the premises, may be made the foundation of a decree for specific performance; but mere possession will not be deemed a part performance sufficient to justify such relief when it may fairly be referable to some other cause than the execution of the contract.

*Error to District Court of Arapahoe County.*

Messrs. A. W. RUCKER and WELLS, McNEAL & TAYLOR, for plaintiffs in error.

Messrs. W. J. SHARMAN and L. S. DIXON, for defendant in error.

MR. JUSTICE ELLIOTT delivered the opinion of the court.

This was an action by Therese L. Bamberger, plaintiff below, to recover possession of certain real estate. In her complaint plaintiff claimed to be the owner in fee-simple of the premises, and charged, in substance, that Claude and Helene L. Von Trotha, husband and wife, defendants below,

had stealthily entered into a certain building situate thereon, and have falsely asserted that the title thereto was in said defendant Helene, and with force and arms have excluded plaintiff therefrom, notwithstanding plaintiff's title is absolutely plain and clear, and defendants' without right, etc.

The defendants by their answer denied plaintiff's title; and by cross-complaint the defendant Helene alleged in substance, among other things, that she, through her husband, negotiated and bargained for the land in the first instance, but that failing in her efforts to complete the purchase, she brought the same to the notice of plaintiff, and thereupon entered into a *verbal* agreement whereby plaintiff was to pay the consideration, and take the title in her own name, to hold in trust for said defendant; that the agreement between plaintiff and defendant at the time was to the effect that the land should be graded and platted into blocks and lots, the plaintiff furnishing the necessary money therefor; that, "in consideration of allowing plaintiff an interest in the purchase and enterprise," it was agreed that, when sufficient lots should be sold to reimburse plaintiff for the purchase money and the cost of improvements, "the remaining part of the premises should be equally divided between plaintiff and defendant;" that, to secure to said Helene the carrying out on the part of plaintiff of the terms of said agreement until such time as the terms should be reduced to writing, it was agreed that defendant should go into exclusive possession of the premises for the benefit of the parties holding and owning the same, and retain possession until the division thereof should be made in accordance with their said agreement.

That, in pursuance of such agreement, plaintiff paid for and received the deed of the premises and undertook to take immediate and exclusive possession of said property; that afterwards said defendant, having procured the removal of a certain tenant who was temporarily occupying the premises, went into the exclusive possession of the property under said agreement, and so remained up to the

commencement of this action; that plaintiff now absolutely refuses to execute her said agreement with defendant, and claims the entire right to said property as her own, to the exclusion of defendant, and threatens to sell the same, and convert the profits thereof to her own use; that said premises have greatly increased in value since the purchase; " that said premises are capable of division at the present time, in accordance with the original contract between plaintiff and defendant;" and defendant asks that "plaintiff be ordered and adjudged to specifically perform the contract," and for other relief.

The court, upon the evidence, made certain special findings favorable to defendant, but which need not be set out at length, since afterwards, upon the final hearing, the court found " that all the allegations of the plaintiff's complaint are substantially true, and also that the allegations of the defendant's cross-complaint are true in manner and form as heretofore found and recorded by the court; but that, all and singular, the matters in the said cross-complaint alleged are insufficient in law to enable the defendant to obtain any relief," etc.

Judgment was entered in favor of plaintiff for the possession and peaceable enjoyment of the premises, and the cross-complaint of the defendant was dismissed. To review this judgment defendants bring the case to this court.

In the special findings of the court referred to in the final decree the trial judge speaks of the defendant's cross-complaint as " setting up the facts substantially as I have found them." Nevertheless, such findings differ materially in legal effect from the allegations of the cross-complaint. For example, the findings state the agreement between plaintiff and defendant to have been that "upon a sale of the property after payment of all charges, interest and taxes, in addition to the cost of the property, they should share and share alike in the *profits* to be derived from the adventure."

And again, the trial court in connection with the special

findings says: " The property, if taken in the name of Mrs. Bamberger, would have been held in trust for the purpose of being sold and dividing the *profits* after payment of all the charges among the persons concerned. * * * She therefore stands to-day, in the view of the court, as a trustee holding the property, not as a permanent investment, but merely and simply for the *profit* that is to be had from the transaction."

On the other hand, the cross-complaint, as we have seen, sets forth an agreement whereby " the remaining part of the premises should be equally divided between plaintiff and defendant " after plaintiff should be reimbursed from the sales, etc., and also speaks of defendant as taking possession of the property for the benefit of " the parties holding and owning the same * * * as an undivided whole until a division thereof should be made in accordance with their said agreement," and other similar expressions. The prayer of the cross-complaint is for a decree for the specific performance of the original contract based upon the theory that " said premises are capable of division."

Nowhere in the cross-complaint is it alleged, either directly or indirectly, that there was ever any agreement between plaintiff and defendant to engage in the buying and selling of the property in controversy, or any part thereof, or any other property or thing, and to " divide the profits to be derived from the adventure." Neither in the cross-complaint nor in the special findings is there any statement that plaintiff has sold or parted with any portion of the property or any interest therein, or that there was any time fixed or agreed upon between the parties within which the land or any portion thereof should be sold. Hence, the special findings were not sufficient to support an equitable decree for profits in favor of defendant, even if the cross-complaint had been framed upon the theory that the verbal agreement was a mere contract for the division of profits between parties engaged in the business of buying and selling real estate. A verbal agreement to share the profits

arising from the purchase and sale of real estate may be made independent of any contract for an interest in the land itself. When so made the agreement is not within the statute of frauds, and may become the foundation of an action for a money judgment, but not for a decree of specific performance affecting the title to the real estate. *Trowbridge v. Wetherbee*, 11 Allen, 361; *Snyder v. Wolford* (Minn.), 22 N. W. Rep. 254; *Treat v. Hiles*, 68 Wis. 344; *Kayser v. Maugham*, 8 Colo. 232.

Whatever may have been the views of the trial judge at the time of making the special findings, it is obvious that, at the time of rendering final judgment, his opinion was that the defendant Helene could have no relief in the present action because the matters and things set forth in her cross-complaint were not supported by evidence in writing as required by the statute of frauds. The correctness of such final conclusion of the trial court is the only matter of law assigned for error. Hence, it would seem that the question might be speedily disposed of. But counsel have discussed the various points relating to the operation of the statute of frauds in transactions of this nature with such extraordinary zeal and ability that great care and considerable space will be required to give their briefs and arguments deserved consideration.

It has already been shown that the gist of this action is not a suit for profits arising from the purchase and sale of real estate; hence, relief under the cross-complaint must be obtained, if at all, by showing that defendant is possessed of some title or interest in the land in controversy.

That plaintiff holds the legal title to the land is conceded. The troublesome question for determination is: May it be established by parol evidence that she holds such legal title in trust for the benefit of defendant, or for the benefit of both plaintiff and defendant? The cross-complaint states that the verbal agreement was "that plaintiff should hold the title in trust for defendant," and that, in pursuance of such agreement, the deed was executed and delivered to

plaintiff. The agreement was voluntary, and, according to defendant's version of the transaction, the conveyance was so made for her special accommodation and protection. So it appears that the parties attempted to create an express trust in contradistinction to a trust arising by " act or operation of law."

In jurisdictions having a statute of frauds like ours, the general rule is that the existence of a direct or express trust cannot be established by parol evidence. When the legal title to land has been acquired in pursuance of a verbal agreement to hold the same in trust for a specified purpose, the agreement cannot be upheld as an express trust by reason of the statute; but, if it be clearly alleged and proved that the title has been fraudulently acquired, and is still held in fraud of the rights of another having a valuable interest in the premises, a trust by operation of law may be declared upon equitable terms. Parol evidence is admissible to prove facts from which a trust by implication of law may arise, but such evidence is not competent to prove an express trust where the statute of frauds is relied on as an objection. 1 Perry, Trusts, §§ 79, 166; 2 Story, Eq. Jur. §§ 972, 980; 2 Pom. Eq. Jur. §§ 1030, 1055, 1056; *Learned v. Tritch,* 6 Colo. 432; *Kayser v. Maugham, supra; Stewart v. Stevens,* 10 Colo. 440; *Todd v. Munson,* 53 Conn. 579.

But it is claimed in behalf of defendant that plaintiff promised to reduce the verbal agreement to writing, whereby defendant's estate or interest in the land would have been declared and protected in conformity with the requirements of the statute of frauds; and that plaintiff's failure to keep such promise is such a fraud upon the rights of defendant as will entitle her to establish her estate or interest by parol, and have plaintiff adjudged a trustee *ex maleficio.* In answer to this claim it may be said that neither the cross-complaint of defendant nor the findings of the trial court contain any statement, either in direct terms or to the effect, that plaintiff made any such promise. The nearest approach to such an averment in the cross-complaint is that,

to "fully secure defendant in carrying out, on the part of plaintiff, the terms of said agreement until such time when the terms thereof should be reduced to writing," it was agreed that defendant should go into and remain in the exclusive possession of the premises, etc. The alleged promise to reduce the verbal agreement to writing is not mentioned in the findings of the court. Considering how easily the protection of the statute of frauds may be swept away, and titles to real property exposed to danger, by the admission of parol evidence to establish implied trusts, we perceive the wisdom of the rule as announced by Chief Justice BECK in *Bohm v. Bohm*, 9 Colo. 111, that "the evidence must be strong and unequivocal, and must clearly establish the trust alleged." Considering, also, the elementary rule that the *allegata* and the *probata* must correspond, we unhesitatingly declare that averments in pleadings, in avoidance of the statute of frauds, must not only be direct and positive, but they must be clear and unequivocal, or they will not be regarded as sufficient, either in form or substance. 2 Pom. Eq. Jur. § 1040; 1 Perry, Trusts, § 226.

Aside from the defects in the pleadings and findings, the rule contended for is not applicable to the case under consideration. Where the statute of frauds prevails, a mere oral promise to reduce to writing a verbal agreement declaring a trust in land, and the breach thereof, are not admissible to establish such trust, except in connection with other evidence tending to show fraudulent conduct in the acquisition of the title by the party holding it; but, when the existence of fraud is thus shown, equity will declare the party thus acquiring and holding the title a trustee *ex maleficio* upon the terms of the dishonored verbal agreement, or other equitable terms, for the benefit of a person having a subsisting valuable interest in the premises,— thus substituting a trust by operation or implication of law in the place of the express trust orally promised. It must be confessed that the route to such a result is circuitous and beset with many obstacles. Nevertheless, courts of equity will

thread their way through its devious courses when it is necessary for the protection or rescue of some unfortunate victim who might otherwise be plundered or defrauded of his estate. But the party claiming such protection must be able to show that he has some valuable subsisting interest, either in the property itself or in the consideration by which the estate has been acquired, possessed, or improved, of which it would be unconscionable to deprive him, before the court will declare a trust in his favor upon parol evidence. It has never been adjudicated, so far as we are advised, that a mere verbal agreement for the creation of a trust in lands in which the *cestui que trust* had no valuable interest independent of the verbal agreement can be exempted from the operation of the statute of frauds and enforced in equity by simply proving the breach of an oral promise to reduce the verbal agreement to writing. 2 Pom. Eq. Jur. §§ 1053, 1056; *Hall v. Linn*, 8 Colo. 264; *Bohm v. Bohm*, 9 Colo. 100; *Levy v. Brush*, 45 N. Y. 589; *Wolford v. Herrington*, 86 Pa. St. 39.

This subject has already received the consideration of this court. In each of the Colorado cases cited above, the parties asserting the breach of an oral promise to execute written instruments declaring the trusts were the original owners of the premises conveyed; and it appeared that, at the time of executing the conveyances, the grantees promised that certain valuable interests in the premises or the proceeds thereof should be reserved and secured to the grantors by appropriate instruments in writing, duly executed and delivered. These promises were not performed. In the *Hall-Linn Case*, the conveyance, though absolute in form, was designed to subserve the purpose of a deed of trust, with a power of sale for the benefit of the creditors of the grantor, of which the grantee was one, the surplus, after the payment of creditors and the expenses of the trust, to be returned to the grantor. This view was abundantly sustained by the evidence, and, though the court declared that the transaction did not constitute a mortgage, it was

analogous thereto in some particulars. At all events, there existed the important tangible facts, to wit: The original interest of the grantor in the estate; the debts which the conveyance was given to secure; and the conduct of the grantee, indicating his trust relation, and that the grantor had not parted with his entire interest in the estate, but that he retained the residue, or whatever might remain of the proceeds thereof, after satisfying his creditors.

In the *Bohm Case* a like valuable interest in favor of the grantor was reserved. Besides, the grantor in that case was the widowed mother of the grantee, who relied, as according to the dictates of reason and humanity she had a right to rely, with peculiar confidence upon the promise of her son. But in the *Bohm Case*, as in the *Hall-Linn Case*, the controlling consideration, furnishing substantial ground for the interposition of a court of equity to take the case out of the statute of frauds, was the valuable interest which the grantor had remaining in the premises notwithstanding her absolute conveyance. In both these cases equity extended its arm to protect valuable interests of the grantors in the premises upon clear proof of fraudulent conduct on the part of the grantees in procuring and retaining such conveyances. Their refusal to execute the written agreements was admissible as evidence tending to show such fraudulent conduct; but such evidence of itself would not have been sufficient, nor would the actions have been maintainable, but for the equities which the grantors had remaining in the premises or the proceeds thereof. *Ryan v. Dox,* 34 N. Y. 307; *Wolford v. Herrington,* 74 Pa. St. 311; 86 Pa. St. *supra; Perry v. McHenry,* 13 Ill. 227; 2 Pom. Eq. Jur. §§ 1055, 1056; *Howland v. Blake,* 97 U. S. 624; *Levy v. Brush,* 45 N. Y. *supra; Todd v. Munson, supra; Gilpatrick v. Glidden,* 81 Me. 137.

Upon principle it would seem that an oral promise by a party, when acquiring title to real estate, to execute a written agreement declaring a trust in favor of another having a valuable interest in the premises, and the breach of such

promise, are admissible in evidence in connection with other facts and circumstances tending to taint the transaction with fraud, thus furnishing, if the fraud be clearly established, a foundation for a trust by operation of law; but that proof of such promise and breach merely, without proof of such valuable interest in the promisee, cannot be accepted as an independent ground for sustaining and enforcing such verbal agreement as an express trust.

It is scarcely necessary to say that the case at bar is lacking in the principal features characterizing the *Hall-Linn* and *Bohm Cases* and the other cases above cited. Neither the defendant, Helene, nor her husband was the original owner of the land in controversy nor any part thereof, nor any interest therein. Neither of them contributed any portion of the purchase money or agreed to do so; nor did they furnish or agree to furnish any money for the improvement of the premises. It is conceded that the $100 advanced as earnest money some little time before the consummation of the purchase was furnished by plaintiff. The receipt therefor was undoubtedly taken in the name of defendant, because it was then expected that she would furnish the greater part of the purchase price, and that the conveyance would be made in her name. But this was abandoned when her plans for raising the purchase money failed; and thereupon plaintiff assumed the whole burden of buying and improving the premises. It does not appear that the Von Trothas and Bambergers were related either by blood or marriage, or that there were any confidential or fiduciary relations existing between them. The only consideration upon which defendant bases her claim for equitable protection against the operation of the statute of frauds is that of "allowing the plaintiff an interest in the purchase and enterprise." This privilege was allowed only after defendant's failure to consummate the purchase, and when she had no interest in or power over the premises; it was allowed, also, upon condition of plaintiff's paying the whole purchase money and all the expenses of improving the

premises. It is clear that defendant had no interest or equity in the premises at the time of the purchase upon which a trust might be declared by operation of law.

If anything further were needed to show that defendant is not placed in a position of peculiar hardship, by reason of her claim being barred by the statute, it is the conceded fact that her husband, through whom everything was done that was done on behalf of defendant in the entire transaction, actually received commissions of over $300 from the seller for his services in consummating this very sale,— conduct entirely inconsistent with his relation as agent for his wife as a joint purchaser with plaintiff.

Again, it is urged that the verbal agreement between plaintiff and defendant in respect to the land in controversy has been partly performed, and that thereby defendant has acquired an equity to have the agreement enforced by a decree of specific performance. Acts of part performance, such as will furnish a foundation for enforcing a verbal contract respecting land otherwise void under the statute of frauds, must be such as are done in pursuance, or according to the terms, of the contract, and which in some manner affect or change the relation of the parties in respect to the property whereby one of the parties would be defrauded if the contract were not enforced. 1 Story, Eq. Jur. §§ 759–766; 3 Pom. Eq. Jur. § 1409; *Gill v. Newell*, 13 Minn. 462 (Gil. 430).

Defendant claims that, by taking possession of the premises with the consent of plaintiff, there was a part performance of the verbal contract sufficient to entitle her to have the same specifically enforced. Actual possession in furtherance of the terms of the contract, especially when accompanied by the making of permanent and valuable improvements upon the premises, may be made the foundation for a decree for specific performance; but mere possession will not be deemed a part performance sufficient to justify such relief when it may fairly be referable to some other cause than the execution of the contract. In this case de-

fendant did not make improvements or expend money upon the land. Besides, defendant's occupation of the premises cannot be said to have been according to the terms of the alleged verbal agreement, nor in furtherance of its ultimate objects as claimed by defendant.

In the special findings of the trial court, as first announced, after stating how the conveyance came to be made in the name of plaintiff, it is said: " Some arrangement was thereafter had as to the possession of the property. Mr. Von Trotha, representing his wife, entered into the possession of the property, and took care and charge of the same." So it appears that possession was not taken in pursuance of the *original* agreement, but under a *subsequent* arrangement. According to the original agreement, as set forth in the cross-complaint, the premises were not intended for the immediate and permanent possession of either or both of the supposed parties interested in the purchase; but they were to be graded, platted, and a certain portion thereof sold, and the residue to be divided, and then, *and not till then,* was each of the alleged parties in interest to come into possession of her separate share of the estate.

It is contended that the transaction between plaintiff and defendant amounts substantially to a mortgage; that defendant has an interest in the premises subject to plaintiff's lien for the purchase money in the nature of an equity of redemption; and that the verbal agreement is to be regarded as a recognition of such interest. From the views heretofore expressed, it will be readily perceived that this position cannot be maintained — *First,* because defendant had no interest in the premises capable of being mortgaged; *second,* because there is no subsisting indebtedness to be secured. Defendant neither owed plaintiff anything prior to the purchase, nor did she become indebted by the purchase, so there is no consideration to support the conveyance as a mortgage.

The claim that plaintiff and defendant were partners in this transaction is untenable; and so, also, is the claim that

plaintiff was the agent of defendant. While some of the matters alleged in the cross-complaint may tend to show an attempt to create such relationship, the averments as a whole do not show a partnership actually formed or "launched," much less a previously existing partnership. The verbal agreement, as pleaded, does not purport to be a contract for a partnership, nor for the relation of principal and agent between the parties. On the contrary, the terms of the agreement are alleged to be that plaintiff was to take the conveyance and hold the title in trust for both parties. The special findings do not show the existence of a copartnership, nor sustain the theory of such an agency as is contended for. The alleged verbal agreement is specifically put in issue by the pleadings; and the denial of the agreement is sufficient to give the plaintiff the benefit of the statute. Hence, the final judgment of the trial court in dismissing the cross-complaint must have been based upon the conclusion that, under the evidence, a partnership was not actually entered into between the parties; that the relation of principal and agent did not exist between them; and that the statute of frauds was a bar to plaintiff's claim. *May v. Sloan*, 101 U. S. 231.

It is unnecessary to further discuss the evidence or findings of the trial court. Proof that a verbal agreement was made as alleged would be no evidence that the conveyance to plaintiff was fraudulent; nor can the fraudulent character of such conveyance be established by mere proof of the breach of the verbal agreement. To hold such proof sufficient to take the case out of the statute of frauds would be to practically abrogate the statute itself. So that, even if the verbal agreement and the breach thereof be admitted, still defendant can obtain no relief in the face of the statute unless such admission, supplemented by proofs *aliunde*, clearly shows that plaintiff acquired the title in fraud of defendant's substantial rights in the land. As we have already seen, the cross-complaint does not contain sufficient allegations upon which to base such proofs.

So, whether or not plaintiff made the verbal agreement as claimed, and then violated it, we need not undertake to determine. Upon this point the evidence is conflicting, not to say doubtful; but fortunately the law is clear upon the pleadings and admitted facts of the case, and we should not hesitate to declare the same.

Eminent counsel and distinguished jurists have battled ingeniously and vigorously for the last two hundred years with cases like this, endeavoring to secure relief under verbal contracts concerning land notwithstanding the statute of frauds and perjuries. At times they have well-nigh succeeded in repealing the statute, and have often illustrated the saying that "hard cases make bad precedents." Nevertheless, the statute has survived these attacks; and the tendency of modern decisions is to maintain its substantial provisions according to its true spirit and purpose, and not to indefinitely multiply exceptions thereto, as the authorities already cited abundantly show.

Upon the whole case, we are constrained to conclude that defendant cannot succeed upon her cross-complaint; and that, even if she has suffered a wrong at the hands of plaintiff in this transaction, she is, nevertheless, precluded by the statute from obtaining the redress she seeks in this action. We are of the opinion that the final judgment of the district court was correct, and the same is accordingly affirmed.

*Affirmed.*