MERINO v. MUNOZ.

(Supreme Court, Appellate Division, First Department. May 1, 1896.)

1. RESULTING TRUST—JOINT ADVENTURE—LIABILITY ON ACCOUNTING.

Plaintiff agreed to take a quarter interest in a mining claim with defendant's testator, with proportional share in the profits, and, on testator's representing that the total price was $300,000, sent him $75,000. It appeared that testator, on completing the purchase, paid only $200,000 for the claim. Held, that testator assumed, as to the amount contributed by plaintiff, a trust relation, entitling plaintiff to an accounting for the amount contributed in excess of the purchase price.

2. STATUTE OF LIMITATION—CLAIM FOUNDED ON ACCOUNTING.

Under Code Civ. Proc. § 388, the right of action for the amount thus contributed in excess of the purchase price, since it depended upon an accounting between the parties, was not barred by statute until 10 years from the time the right of action accrued.

Appeal from judgment on report of referee.

Action by Pedro A. Merino, surviving partner of Pedro N. Merino & Sons, against Leontine C. Munoz, executrix of the estate of Jose M. Munoz, deceased, to recover $25,000 alleged to be due from the testator. Judgment was rendered in favor of defendant, and plaintiff appeals. Reversed.

Argued before VAN BRUNT, P. J., and RUMSEY, WILLIAMS, O'BRIEN, and INGRAHAM, JJ.

James L. Bishop, for appellant.
Henry Major, for respondent.

INGRAHAM, J. The appellant presented a claim against the estate of Jose M. Munoz, deceased, and, that claim having been rejected, the parties agreed to refer the matters in controversy to a referee, under section 2718 of the Code. There were no pleadings, and we have not a definite statement of the appellant's cause of action, and the nature of the judgment that the appellant demanded. The amount of his claim, he stated, was $25,000. So far as appears, there was no formal statement of the claim made, but the parties proceeded before the referee to take the testimony, and upon that testimony the referee has dismissed the claim, upon the ground that it is barred by the statute of limitations.

The material facts appear in certain letters written by the respondent's testator. From such letters it appears that the respondent's testator, having made a contract to purchase an interest in certain mining claims, proposed to the appellant that he (the appellant) should join in the speculation, and that, if the appellant would contribute £15,000, the respondent's testator would convey to him one-fourth of the interest which the respondent's testator should own in the property, and one-quarter of the profits to be realized therefrom. This proposition, as contained in a letter of June 28, 1883, was as follows:

"What I propose to you is that, for £15,000, I will admit you as a participator with me to the extent of one-quarter of my interest in the property, as specified; that is, that you are to be my partners to that extent in my speculations with Webb, Anderson & Whiton, sharing in the same proportion the profits that may accrue to me if there are any. Of course, Webb, Anderson & Whiton don't know you at all in the transaction. Of course, I will tell them of it, and explain the transaction. Your arrangement is with me, and not with them; and, if you do take part, it must be well understood that I will have the management here of everything, and that, successful or disastrous, I am the only one who will represent and manage here for both."

In a former letter Munoz had told the appellant that his interest in the mines he had secured by paying or promising to pay $400,000 or £80,000. In a subsequent letter of August 24, 1883, Munoz stated that it was understood that the plaintiffs were to pay $75,000 for the one-quarter interest. This letter also contained the following statement:

"In looking over my letters to you, I find that, in that of May 28th, in which I first broached the subject, I told you that I had agreed to pay $400,000 for the interest. This was an error. I should have said $300,000, which is what I meant to say, for this is the amount of my contract. I gave you the one-quarter proportion right; $75,000 for the one-quarter of my interest. Why I said $400,000 I can't imagine."

This proposition was accepted by the appellant, and during the year 1883 the sum of $75,000 was paid by the appellant to the respondent's testator. The relation that thereupon existed between these parties seems to be quite clearly defined. The properties purchased by the respondent's testator were certain mining claims, or interests in mining property, in the state of Colorado. By the payment of this $75,000, the plaintiffs acquired one-quarter interest in such properties, and were to be entitled to one-quarter of the profits realized from the purchase of such interest by the respondent's testator,—the respondent's testator to manage the joint adventure,— and all profits to be realized therefrom were to be divided in the proportion of one-quarter to the plaintiffs and three-quarters to the defendant's testator. And it was clear, also, that the contribution by the plaintiffs to this joint adventure was based upon the amount that the defendant's testator was to pay for the interest that he acquired,—the plaintiffs to pay one-quarter of such amount, and to receive a one-quarter interest in the profits to be realized. It was upon the statement by the defendant's testator to the plaintiffs that he was to pay $300,000 for the interest that was purchased that the contribution by the plaintiffs was made. It is clear that the

parties did not contemplate an absolute purchase of one-quarter of the respondent's testator's interest, as distinct from a joint speculation in the purchase by the respondent's testator of an interest in these mining claims; the intent evidently being that the respondent's testator was to acquire the interest specified, to hold and manage such interest until the same could be disposed of, and the profits divided in the proportion named.

There is no evidence in the case, except a letter to be hereafter mentioned, as to the amount of money that the respondent's testator actually paid for the interest that he purchased in these mining claims. It seems that a copy of a contract was sent to the appellant, by which it appeared that the respondent's testator had an option to purchase these mining claims at the price of $300,000, to which was annexed a statement, made by the respondent's testator, that this option had been exercised, and the property purchased. Nothing was expressly stated therein as to the amount that was paid, except that the sum of $75,000 was stated to be one-quarter of the purchase money; but it appeared that subsequently, in the year 1885, two deeds or conveyances were executed to the respondent's testator, conveying certain mining interests, the consideration in each of which was $1. It does not appear that the appellant received any further information, as to the amount actually paid by the respondent's testator for the mining interest, until March 23, 1888, when, by a letter to the appellant, it was stated but $200,000 in money had been paid for the mining property. And subsequently respondent's testator caused two deeds or conveyances to be executed, each of which expressed a consideration of $37,500, by which one-half of his interest in this mining property was conveyed to the appellant; and those deeds were duly recorded and sent to the appellant. In answer to the letter conveying those deeds, the appellant says:

"We take note that you have made our share in these properties one-half of your interest, instead of one-quarter, for which we are much obliged; but we should like to have some explanation on the subject, as, if you have done so as compensation in settlement of our claim for $25,000 against you, in the matter of payment for the share we have bought in the property, we must say we cannot accept this arrangement."

So far as appears, this is the first time that the appellant made any claim that he was entitled to receive back the proportion of the $75,000 contributed by him not used in the purchase by the respondent's testator of the one-quarter interest that the appellant had acquired. But from this letter it clearly appears that, at that date, namely, April 30, 1889, the appellant had notice of the fact that the amount invested was not $300,000, but was $200,000, and that he looked to the respondent's testator for a repayment of that amount. The respondent's testator died October 4, 1893, and it appeared that, on January 7, 1894, a specific claim was made against his estate for this sum of $25,000.

The referee appears to have held that, in 1885, when these mining claims were conveyed to the respondent's testator, the appellant was then entitled to commence an action against him for the

$25,000, that the statute of limitations commenced to run against such claim at that time, that the six-years statute applied, and that the claim was barred, no action having been commenced within six years. In this we think the referee clearly erred. The appellant had transmitted to the respondent's testator $75,000, to be invested by the respondent's testator in this joint adventure, in which the appellant was to pay one-quarter of the purchase price, and was to have one-quarter interest, and to be entitled to one-quarter of all profits realized; and such remittance was based upon the statement, by the respondent's testator, that the total amount that he was to invest was to be $300,000. We think this relation was one of partnership in one particular adventure, and that the respondent's testator, as to the receipt of this money, was a trustee for the appellant. The relation was, in its nature, a trust relation, and one which would entitle the appellant to require the respondent's testator to account to him for the $75,000 that he had given to him to invest. There was no contract, express or implied, to return to the appellant any particular sum of money; and when the respondent's testator acquired the property for the sum of $200,000, he held in his hands the sum of $25,000, contributed by the appellant to be applied on this joint adventure, for which he could have been compelled to account. No money demand on contract, however, had arisen in favor of the appellant; but the liability, if any, depended upon an accounting between the parties as to the investment of this sum of $75,000; and that cause of action would not be barred by the statute until 10 years from the time the right of action accrued. See section 388 of the Code.

If, however, it should be held that a right of action did exist against the respondent's testator to recover this $25,000 at the time that he finally acquired title to the property, namely, in 1885, we think then that subdivision 1 of section 410 of the Code applies. It is there provided that, where the right to entitle a person to maintain an action grows out of the receipt or detention of money or property by an agent, trustee, attorney, or other person acting in a fiduciary capacity, the time must be computed from the time when the person having the right to make the demand has actual knowledge of the facts upon which that right depends. This demand came within this provision. The sum of money was deposited with this respondent's testator, to be invested in the purchase of property. There was no agreement that it was to be returned to plaintiff until the transaction was fully closed and the profits ascertained, and it is clear that, before the appellant would be entitled to maintain an action to recover it back, either an accounting would be necessary or a demand made for its return.

The cases cited by the respondent, and relied on by the referee, do not apply. In all of these cases the obligation to pay to the plaintiff existed upon the receipt of the moneys by the defendant. No demand was necessary. Here, no such obligation existed until it should be determined what amount was required for the investment. The relation that existed between the parties was that of

partners in a joint adventure, and the respondent's testator received the money in a fiduciary capacity, to be invested for the appellant upon a statement that the amount to be invested would be $75,000. The investment amounted to but $50,000, but the right to make the demand depended upon the existence of the fact that the one-quarter of the property cost but $50,000; and the time must be computed from the time when the plaintiff had actual knowledge of that fact upon which the right to make the demand depended.

We think, therefore, that the referee erred in holding that the claim was barred by the statute of limitations, and that the judgment should be reversed, and a new trial ordered, before another referee, to be appointed by this court, with costs to the appellant to abide the event. All concur.