## HALL v. LINN.

1. In the trial of chancery cases under our practice the court may, on its own motion, invoke the aid of a jury to determine specific questions of fact, but such findings are simply advisory.

2. While the code required in all cases that a motion for a new trial be interposed when the party objected to the finding as being against the evidence, yet a motion for a decree in conflict with the verdict was sufficient compliance with the requirement of the code.

3. It is unnecessary to reserve an exception to the ruling upon a demurrer; the error, if any, is preserved by the record.

4. Where no cause of action is stated in the complaint, the objection is not waived by pleading over, and may be raised at any time.

5. A mine was conveyed by absolute deed under agreement that the grantee should operate the same and consummate a sale thereof, and from the proceeds thus accruing, first compensate himself for services; second, pay a debt due himself from the grantor; third, discharge the claims of other creditors against the grantor; and fourth, return the surplus, if any, to the grantor; *held*, that the transaction did not constitute a mortgage, but was a trust in the nature of an assignment for the benefit of creditors.

6. When, as a part of the original contract through which defendant becomes the absolute grantee, but is in fact constituted merely a trustee, he agrees to execute a declaration of trust and preserve the same for the plaintiff's use, but fraudulently fails and refuses so to do, the terms of such trust may be proved by parol, notwithstanding the statute of frauds.

7. A court of equity will, at all times, lend its aid to defeat fraud, notwithstanding the statute of frauds.

If fraud, actual or constructive, tainted the original contract, parol evidence is admissible notwithstanding the statute.

8. Equity recognizes a constructive trust when one has obtained money through a breach of trust or violation of fiduciary duty.

*Appeal from District Court of Jefferson County.*

THE complaint in this case alleged an indebtedness of Linn to Hall and to Hall & Company, and other parties; second, a conveyance of a mine to Hall to secure the debt to him, under an agreement that Hall should work the property, receive compensation for his services, also sell the property, and out of the proceeds of sale should

pay himself, the debt of Hall & Company and the other debts of Linn, after which, if there was any balance, it was to be paid to Linn; third, that Hall worked the property, made a sale, and that there was a balance due Linn of $107,000.

The answer denies the agreement alleged in the complaint; avers absolute sale of the property in payment of Linn's debts to Hall and Hall & Company, aggregating $6,000; denies extent of product of the mine from working and the proceeds of the alleged sale, and avers that the same aggregated only $79,468; also the statute of frauds; also avers a prior conveyance of the premises in trust to third parties to secure $4,000; also sale under said trust deed and purchase at said sale by Hall with his own private funds, and that at that time he had no funds whatever belonging to Linn.

The replication to this answer admits: 1st. The giving of the trust deed, but avers an agreement of Hall to pay the trust debt, and protect the property from sale under the deed. Also that Hall then had funds in his hands to do this, belonging to Linn. 2d. To the plea of the statute of frauds the replication avers that it was part of the agreement that Hall was to reduce the terms of the trust agreement to writing and execute the same; that he failed to do so, and admits that there was no writing containing said trust agreement, and that Hall agreed, as part of the consideration for security thus received, to execute a written instrument embracing these matters, but failed to do so.

By leave of the court a new count was added to the original bill, containing same averments as in the bill except that it averred the agreement provided for the conveyance to Hall as security for the payment of Hall and Hall & Company's claims against Linn; also that Hall should be placed in possession, with privilege of working and selling the property; also that Hall was au-

thorized to pay other debts of Linn, and, if compelled to settle the trust deed claim of $4,000, was to reimburse himself therefor out of the proceeds, and to return the balance to Linn. Also, by leave of the court, a second new count was added to the bill, the same as the foregoing, except that it contains nothing concerning the trust debt of $4,000.

Upon motion to strike out the second added count, the plaintiff was compelled to elect upon which count he would go to trial, and he elected to take the first additional count. A demurrer to this count was overruled, and defendant answered to it.

By leave of the court Linn, plaintiff, filed an amended replication in which he, 1st, denies absolute sale, and reavers the purposes charged in the bill. 2d. Avers that the conveyance was intended by the parties as a mortgage; charges that Hall was to pay a certain note and had funds of Linn to do so. 3d. Replies to statute of frauds that it was understood that the deed to Hall was simply a mortgage to secure Hall and Hall & Company's claims. 4th. That Hall verbally agreed to execute a writing showing the terms of the mortgage; that with fraudulent intent he refused to execute such writing, and admits that no writing was executed noting these terms or conditions.

An answer to the second count of the bill was filed substantially the same as the first answer, with an averment added of an agreement with the purchaser to expend $10,000 in development which had never been rescinded.

This answer also contained a plea of the statute of frauds, to which a demurrer was sustained.

The replication to this answer denies the ten thousand dollar agreement, admits sale under deed of trust, but denies the purchase was made with funds of Hall, but with funds from the proceeds of the mine.

Messrs. WELLS, SMITH and MACON and Messrs. MORRISON and FILLIUS, for appellant.

Mr. L. C. ROCKWELL and Messrs. TELLER and ORAHOOD, for appellee.

HELM, J.   As we shall presently see, the principal issue tried in this case was equitable.   The court submitted several propositions to a jury, and obtained special findings of fact thereon.   It is true, a general verdict was also returned in which the amount of plaintiff's recovery was fixed; but we shall assume with counsel that this does not affect the *status* and rights of the parties under the special findings.

That, in the trial of chancery cases under our practice, the court may, on its own motion, invoke the aid of a jury to determine specific questions of fact, we do not doubt.   Such findings are, however, no more binding now on the chancellor's conscience than they were when the old chancery practice prevailed.   Conclusions of the jury are with us in such cases simply advisory; they may be accepted and form the basis of decree or judgment, or they may be entirely disregarded.   When the Code of. Civil Procedure was first adopted, the contrary suggestion on this subject in the note on page 376 of Adams' Equity may have been applicable.   But the enactment in 1879 of what is now section 154 of that instrument clearly established the practice of trying chancery cases to the court without a jury; and we do not think it can now be correctly claimed that special findings of a jury in such cases are as binding as verdicts in actions at law.

While, however, the foregoing discretion as to the verdict is lodged with the court, it is asserted with confidence that in cases like this, before the party against whom the findings are made can secure a review thereof upon the *weight* of evidence, he must move for a new trial in the court below; that if he does not thus challenge these findings he will not be heard to complain of them on this

ground in a court of review. The opinion in *Duff v. Fisher*, 15 Cal. 377, is cited in support of this proposition.

Without repeating or discussing the reasons presented by the learned chief justice in that case, suffice it to say that, so far as our present practice is concerned, we think his conclusion upon this point is substantially correct. Chapter 16 of our code seems to provide for this motion in all cases, whether legal or equitable, whether tried to the court, jury or referee; and there can be no doubt but that where the aid of a jury is secured in an equity case, the correctness of their findings, when questioned upon this ground, should be challenged in some appropriate way. Upon the return of such findings, if a new trial by them is not desired, the insufficiency of the evidence to support their conclusions should be pointed out, and a decree demanded in disregard thereof. Such proceeding, it will be observed, is substantially a new trial, for the chancellor is asked to retry the issues himself upon the evidence and render findings in conflict with those of the jury.

Whether the motion of appellant upon the return of the verdict in this case can be treated as a substantial compliance with the foregoing views, we need not determine, for so considering it, we would decline to reverse the judgment as being against the weight of evidence. A careful and laborious examination of the entire record has led us to the conclusion that the evidence, though voluminous and conflicting, sustains the findings of the jury.

It is possible that appellant's version of the original transaction is correct; but if so, he is the victim of unfortunate circumstances connected therewith, for which he is himself largely responsible. For instance, he asserts that the conveyance was made in pursuance of an absolute sale to him of the premises as full payment of Linn's debts to himself and to the company of which he was the senior partner; yet, the consideration expressed in the deed *was one dollar*, no note was returned to Linn

and no receipts or other paper given, showing his release from liability on account of either of these debts. For months thereafter, no memorandum or entry was made upon the company's books, and no notice given appellant's partners to the effect that he had individually assumed the company claim against Linn of over $4,000. When pressed by one of his partners about the transactions, he told him that he had agreed in writing to pay Linn's other debts from the proceeds, and return the surplus, if any, to Linn. He did actually discharge upwards of $25,000 of such debts to other creditors, though he denies any obligation so to do.

Appellant gives plausible reasons for these and other suspicious circumstances, but despite such explanations, they weigh strongly against his assertion of the absolute sale as aforesaid. The testimony of appellee and his witnesses is not above criticism, it is true, but a judge or a jury in considering the evidence as it appears in this record might well resolve the conflicts and contradictions as they were determined at the trial below; we are not prepared to say that the parol agreement averred by appellee is not established with as much certainty as is required in such cases.

We will not notice in detail the assignments of error relating to the admission or rejection of evidence. If the issue or issues made by the pleadings are not obnoxious to the objections *in law* interposed, there was no such error in receiving or excluding testimony thereunder as warrants a reversal.

Upon the return of the special findings, appellant, who was defendant below, presented a motion for judgment *non obstante veredicto*. It is doubtful if technically such a motion should be entertained when made by the defendant. But we shall adopt appellant's own view concerning the purpose of this motion, and consider it as analogous to a motion in arrest of judgment. Through it he asked the court to treat the general verdict as a

nullity, and dismiss the action for fatal defects in the complaint, though the special findings upon the evidence were favorable to the plaintiff. His position was that the complaint was fatally defective, in that it failed to aver a cause of action upon which a judgment or decree for plaintiff could rest.

It is true, as counsel for appellee assert, that this objection was made by demurrer; it is also true, as claimed, that no exception was taken when the demurrer was overruled, and that defendant afterwards filed his answer to the pleading. But, in the first place, an objection taken by demurrer, unless waived, saves itself; the error, if any, is preserved by record, and no exception to the ruling thereon need be reserved. And, secondly, this is one of the two radical grounds of demurrer that are not waived by pleading over; it is an objection which may be made at any time. Under the present practice it was proper to renew the same at the close of the trial, and before judgment. There has been no such waiver as relieves us from the duty of passing upon the objection taken in the court below to the complaint.

We, therefore, now proceed to what, chronologically perhaps, should have been first considered. From the "chaos of pleading," as counsel term it, a supposed issue was finally reached, upon which the cause was tried. Appellant most strenuously denies that any sufficient issue at all was made. And as to what the issue or issues, if any existed in the pleadings, really were, the numerous counsel employed hold diverse and conflicting opinions.

From the averments of the complaint and replication, it appears that one of the purposes of the transaction in question was to secure the debts due from appellee to appellant and Hall & Co.; but it is also clear therefrom that there existed an intention to create, out of the property conveyed, by working and sale thereof, a fund to be used in discharging these and appellee's remaining debts;

the balance, if any thereafter remained, to be paid to appellee himself.  Every act after execution and delivery of the deed and placing appellant in possession of the premises was to be performed by him; he was to and did operate the mine; and he was to sell the same when a purchaser should be found; out of the proceeds from such working and sale, he was first to compensate himself for his services, then pay his own claim and that of Hall & Co. against the appellee; after this he was to satisfy appellee's other creditors; and, finally, if a balance still remained from such proceeds, he was requested to pay the same over to appellee.

Appellee himself was to do nothing to defeat appellant's apparent title; no provision for redemption or for the execution of a reconveyance to him existed; on the contrary, the express understanding was, that the property should be sold by appellant.

The transaction reflected by the complaint was peculiar; but we cannot conclude that it constituted a *mortgage*.

The most reasonable view that can be taken of it, in the light of all the averments, is that a trust was intended by the parties.  While, as above declared, the idea of security may have existed, yet the whole arrangement partakes more of the nature of a conveyance or assignment for the benefit of creditors.  And this theory is corroborated by the evidence; for, after making the deed, appellee went about notifying his other creditors that appellant would discharge their claims out of the property, if sufficient proceeds were realized therefrom; and these claims appellant afterwards actually paid.

The foregoing conclusion disposes of the objection that the suit was tried upon a new cause of action, pleaded after answer to the original complaint.  The legal effect of the matters averred in the amended or additional count, and in the original pleading, was the same, so far

as the nature and foundation of the suit were concerned. The material changes were evidently made to meet defendant's two affirmative defenses, viz.: his title through purchase at the Cushman sale, and the asserted bar under our statute of frauds.

The deed to appellant was absolute in form; it declared none of the conditions of the trust. These conditions, though made at the time of the conveyance, were not reduced to writing. Upon this fact is predicated appellant's principal objection to the pleading and subsequent proceedings. He claims that since this trust concerns an interest in land, and since it was not in writing, the fiduciary part of the contract is avoided by the statute of frauds; that thus appellee's complaint shows on its face a bar to his recovery. To avert the effect of this proposition, two propositions are contended for by appellee, viz.: first, that the promise of appellant also averred, to reduce the terms of the trust to writing and execute the same, though he failed and neglected so to do, constituted *per se* a waiver of the statute in this transaction; and second, that the complaint shows such a part performance of the conditions of the trust agreement as avoids the statute.

We agree with appellant's counsel that the cause of action in this case involved the consideration of a contract concerning an interest in land. The immediate purpose was the recovery of a balance claimed to be due appellee as the result of the transaction; but the essential prerequisite to such recovery, as evinced by the evidence and also by the specific questions of fact submitted to the jury was as follows, viz.: that the deed to appellant, though absolute in form, be shown to have in fact simply conveyed the property in trust; it was impossible for appellee to establish any right whatever to recover a single dollar except as a foundation he first established the existence of this trust. Therefore the terms of the

trust existing only in parol, the statute of frauds barred appellee's recovery unless in some way he avoided its application.

Plainly stated, the naked legal question now presented is, where, as a part of the original contract through which defendant becomes the absolute *grantee* of the premises, but is in fact constituted merely a trustee thereof, he agrees to execute a declaration of the trust and preserve the same for plaintiff's use, but fraudulently fails and refuses so to do, may the terms of such trust be proved by parol evidence notwithstanding the statute of frauds?

Undoubtedly courts should be and are extremely cautious in recognizing and giving effect to circumstances which avoid the application of this statute. The object of its enactment is highly beneficent, and its operation is generally wholesome. But when, instead of preventing fraud, it becomes an instrument through which fraud is sought to be perpetrated, courts of equity sometimes interpose a protecting shield, and avert the injury that would otherwise follow.

In so doing they are simply carrying out the real design of the statute. It has been well said, "that the fraud which the statute was intended to suppress consists in the assertion of a contract, *which was never made,* whereas the fraud against which courts of equity * * * afford relief consists in the repudiation of a contract which *has been made*, and upon which an innocent party has actually proceeded to do that for which the jurisdiction of the law courts affords him no just recompense. * * * The correct view appears to be that equity will at all times lend its aid to defeat fraud, notwithstanding the statute of frauds." Browne on Stat. of Frauds, sec. 438. "The statute of frauds is no obstacle in the way of proof of actual or *constructive* fraud in the sale of property. Lord Hardwicke stated 'that the court adhered to this principle, that the statute of frauds should never be

understood to protect fraud, and, therefore, whenever a case is infected with fraud, the court will not suffer the statute to protect it.'"    1 Perry on Trusts, sec. 226.

It was a reliance upon the foregoing principle that induced courts of equity to recognize the well-known doctrine that a deed absolute on its face may be proved by parol to be only a mortgage.   Our statute concerning such mortgages is simply the legislative recognition of an existing judicial rule theretofore sanctioned by a decided weight of authority.   And it was also through the desire that the statute of frauds should not become a medium of fraud that the doctrine of its avoidance by part performance of the contract came into existence.

The case at bar furnishes an instance where this statute, if controlling, becomes the potent instrument through whose agency a fraud is consummated.   The complaint avers, and the jury find, that appellant agreed to reduce the conditions of the trust to writing, also to sign and preserve the same.   Now, when called upon in a court of equity to account in good faith for his stewardship, he answers: "It is true that, in accepting the trust, I promised to make and preserve this writing; and it is true that this pledge was a part of the contract through which I obtained title to the mine; nevertheless, I have failed and refused to comply with the promise so given, and the conditions of the trust are, for this reason, not in writing; therefore, I am not *legally* bound to do that which in conscience I ought.   This is a fraud in fact, I admit, but, under the broad mantle of the statute of frauds, I propose to reap the benefits resulting from my own bad faith."

The foregoing seems like strong language, but it must be remembered that, for the purposes of this argument, the averments of the complaint are assumed to be true; and also that appellant is relying upon the statute of frauds as a defense.

It may be claimed, however, that the refusal of Hall

to declare the trust in writing was an afterthought; that his fraudulent assertion of absolute ownership was not contemplated until after the title passed.  We do not concede the correctness of this position; the complaint states equitable circumstances which, if sustained, would be sufficient to take the case out of the statute; upon the introduction of evidence supporting all the averments thereof, a jury or court would be justified in imputing to appellant deceit in obtaining the title.  But if we were to admit that the fraud was a subsequent conception by him, there is strong reason and authority for the position that the bar of the statute would nevertheless not attach in this case.

It is said that "if you interpose the medium of fraud by which the agreement is prevented from being put into writing, the cause would be taken out of the statute." 1 Sugden on Vendors, 224.  We are aware that this proposition is announced in the discussion of circumstances differing from those here presented.  But why should not the doctrine be held applicable to cases like this, where a fiduciary relation exists between the parties? What difference does it make in principle whether a trustee by fraud or deceit prevents the reduction of the trust agreement to writing at the time the trust is created, or with wrongful intent neglects and refuses to afterwards make a written declaration of material conditions thereof, in accordance with his promise so to do, which promise is also a part of the original contract? The "medium of fraud" exists in the latter as in the former case; and the effect produced thereby is equally disastrous in both.

The foregoing suggestion is not unsupported by authority.  The case of *Jenkins v. Eldredge*, 3 Story, C. C. R. 181, is in this particular strikingly like the one before us.  Eldredge agreed "to reduce the trust to writing, and keep a private memorandum thereof in his own possession, as evidence in case of death or accident."

This he did not do, and the bearing of the statute being under discussion, Mr. Justice Story said: "I do not incline, however, to impute to Eldredge any such original premeditated intention of fraud as the argument of plaintiff supposes. * * * In my judgment, the result is the same, although the original design of Eldredge was perfectly fair and honorable, if he has since deviated from his duty, and attempted to absolve himself from the obligations of the trust, such as he knew the plaintiff believed it to be, and constantly acted upon; *because, in point of law, it would be a breach of the trust involving a constructive fraud, such as a court of equity ought to relieve against.*"

In *Campbell v. Dearborn*, 109 Mass. 130, Wells, J., delivering the opinion of the court, uses the following language: "This, indeed, is only one form of the application of the general rule of equity, that one who has induced another to act upon the supposition that a writing had been *or would be given*, shall not take advantage of the act, and escape responsibility himself by pleading the statute of frauds on account of the absence of such writing, which has been caused by his own fault."

This language is used with reference to cases where absolute conveyances are intended to be mortgages, and a defeasance is to be, but is not, by a separate instrument executed, or, being executed, is afterwards destroyed; but the "general rule of equity" announced is believed to be broad enough to include the case at bar.

There is here, to say the least, such unconscientious conduct in the fiduciary relation as may fairly bring the case into the field of what equity denominates constructive fraud. The failure and refusal to declare the trust in writing, and denial of the existence thereof, coupled with the attempt of Hall to retain and appropriate to his own use a part of the proceeds from the sale of the trust estate, constitute such a breach of fiduciary duty as a court of equity ought not to overlook.

But if fraud, actual or constructive, tainted the original transaction, parol evidence is admissible to establish the contract, notwithstanding the statute.

Upon reflection, counsel will realize that this is unlike the case where some of the conditions of a contract-concerning land are voluntarily left unwritten; reliance for performance of the unexecuted portions being placed solely upon the honor and good faith of the party who is to perform the same. It is more analogous to the class of cases where, by fraud or deceit, the contracting party who seeks to invoke the statute prevented the agreement, or a part thereof, from being reduced to writing. Appellee here demanded that the terms of the trust should be put in writing and signed; but, being in haste, he secured and depended upon appellant's promise so to do. Had appellant fulfilled his promise, the statute of frauds would have been satisfied. Whether appellee actually thought of this statute at the time, or not, he made provision for a compliance therewith; and it seems to us that he stands in a very different attitude in relation thereto from that which he would occupy if he had made no effort to have the conditions of the trust reduced to writing. See *Wolford v. Herrington*, 74 Pa. St. 311, and cases there cited.

Again, equity recognizes a constructive trust when one has obtained money "through a breach of trust or violation of fiduciary duty." 2 Pomeroy's Eq. Juris. sec. 1047.

The money belonging to appellee in this case was not obtained by appellant through a breach of trust, but it is withheld by him in violation and repudiation of the trust. Were he to invest it in realty and take the title in his own name, would not equity recognize a constructive trust therein in favor of appellee? This money does not equitably belong to appellant, and he cannot, in good conscience, retain it; the statute of frauds being avoided by the fraud aforesaid, why may not a constructive trust be regarded as existing in connection therewith? A civil

action in the nature of an implied *assumpsit* would not have been an adequate remedy for the recovery of this money; the greater facilities secured in an equitable proceeding, even under our present practice, for investigating the vital question presented in this case, rendered a resort to that forum peculiarly appropriate. See Pomeroy's Eq. Juris. sec. 1047, *supra*.

In our judgment, no dangerous consequences need be feared if equity interposes its salutary power in cases like this on the ground of fraud, and "wrests them from the grasp of the statute of frauds."

If the foregoing views are correct, it follows that the complaint is not obnoxious to the objection urged. The matters therein stated being taken as true, the statute of frauds did not bar the action; moreover, as above suggested, we think the evidence supported the issue with the certainty and clearness required in such cases, and consequently that the findings of the jury are sustained thereby. The defense of purchase at the Cushman sale is disposed of by the jury's finding in connection therewith, coupled with our conclusion as to the admissibility of oral proof of the trust conditions.

The length of this opinion is our excuse to counsel for not considering and passing upon the application to this case of the doctrine of part performance, a subject upon which able and elaborate arguments, *pro* and *con*, have been presented; the conclusions already reached are decisive of the case, and a discussion of this question is therefore not necessary.

The judgment is not in technical form a decree upon the findings, but there is no fatal defect therein, and it is therefore affirmed.

*Affirmed.*