[No. 7647.]

McPherrin v. Fair et al.

1. Evidence—*Discrediting Witness.* A witness held discredited by his criminal conduct in the fraudulent alteration of a deed. (336)

2. Contract—*Oral—Validity.* One who, upon a consideration promised, agrees by word of mouth to purchase land for another, advancing the purchase money as a loan to his principal, is bound by the engagement. (337)

If he take title in his own name, or in the name of a third person for his own use, equity will compel a conveyance to the principal.

That at the time of entering into the engagement he is negotiating for the land upon his own account and behalf, is immaterial. (336)

3. Statute of Frauds—*Resulting Trust.* In such case a resulting trust is created by operation of law. Such trusts are excepted from the statute of frauds. Rev. Stat. §§ 2660, 2661. (337)

4. ——*Evidence.* The facts from which the law raises a resulting trust in lands may be proven by parol. (338)

5. Principal and Agent—*Duties and Disabilities of Agent.* One employed to purchase lands for another is not at liberty to take title thereto in his own name, or in the name of another for his use. (339)

*Error to Phillips District Court.*—Hon. H. P. Burke, Judge.

Messrs. Allen & Webster, for plaintiff in error.

Mr. Phillip Zimmerman and Messrs. Munson & Munson, for defendant in error, L. E. Fair.

Chief Justice Musser delivered the opinion of the court:

McPherrin obtained from the Westinghouse Company a deed to certain land in the possession of Fair, and to which the latter had a tax title. Before recording the deed, McPherrin changed the name of the grantee from his own to the name of one Jackson, and changed the expressed consideration of $50.00 to $250.00. Thereafter, he caused a conveyance of the land to be made from Jackson to Mail, in whom the apparent title reposed at the commencement of the action in the district court. In justice to Mr. Mail, it should be said that he had no knowledge of the transactions of McPherrin in connection with this land, and disclaimed any interest in himself.

The controversy was to have the title of McPherrin declared to be in trust for Fair, and to compel a conveyance to the latter. It was claimed by Fair that McPherrin was Fair's agent for the purchase of the land, and wrongfully took a deed to himself instead of to his principal, Fair. After a trial, judgment was rendered in favor of Fair, and in the decree the court's findings were recited as follows:

"The court further finds that E. N. McPherrin was employed by the said L. E. Fair as his agent to purchase the said land in question for the said Fair; that the said E. N. McPherrin violated the terms of his contract with the said Fair in this, that he took the title to the said land in himself, thereafter so altering the deed that the name of J. W. Jackson was inserted therein as grantee in the place of the name of E. N. McPherrin which the said E. N. McPherrin erased; and that thereafter the said

McPherrin caused the land to be deeded by the said J. W. Jackson to John F. Mail, the plaintiff herein, who has since disclaimed; that neither the said J. W. Jackson nor the said John F. Mail, had any right, title or interest in and to the premises in question, their names being merely used to conceal the transaction, and to conceal the name of the real party in interest, or real grantee, who was E. N. McPherrin.

"The court further finds that no deed was ever executed for the said land to the said Jackson; that the said deed to McPherrin which was afterwards altered by the said McPherrin by inserting the name of J. W. Jackson in lieu of his own as grantee, also contained the original consideration of fifty dollars, which the said McPherrin altered to read two hundred and fifty dollars.

"The court further finds that by the agreement between E. N. McPherrin and L. E. Fair the said Fair was to pay the said E. N. McPherrin the sum of five dollars for his, McPherrin's, services, in purchasing the said land for the defendant Fair, and was also to pay the said McPherrin the sum of fifty dollars, the same being the known price for which the Westinghouse Company was willing to transfer said land; that it was agreed between the said McPherrin and the said Fair that the said McPherrin should advance the fifty dollars for the purchase of the said land for the said Fair, and that the said Fair should thereafter reimburse the said McPherrin for the said fifty dollars, so expended for the purchase of said land, and also should pay the said McPherrin the sum of five dollars for his, McPherrin's, services as aforesaid."

It was adjudged that the title was held in trust for Fair, and that the land should be conveyed to him upon the payment of $55.00 to the clerk of the court for the use of McPherrin.

It is contended by the plaintiff in error that the evidence was not sufficient to support the findings of the court. Fair testified that McPherrin, who was a banker at Holyoke, came to Fair's ranch and asked if the lat-

ter had bought the land. Fair said that he had made arrangements with the owner, whose headquarters were at Council Bluffs, to buy the land for $50.00. McPherrin said that he was going to Omaha soon, and that for $5.00 he would cross over to Council Bluffs, and get the deed for Fair. The latter consented and told McPherrin that he would come into Holyoke and get the purchase money for McPherrin. The latter said that was not necessary; that he would advance the money as a loan to Fair, and the latter could pay it when the deed was obtained. So it was agreed that McPherrin would advance the $50.00 to Fair as a loan, go to Council Bluffs, get the deed of the land for Fair, and receive $5.00 for his services. McPherrin denied this. Two other witnesses testified that McPherrin told them that he was buying or attempting to buy the land for Fair. This testimony, together with the crude attempt of McPherrin to conceal the name of the grantee in the deed, and the consideration, casts discredit on McPherrin's testimony. Under such circumstances, this court would be unwarranted in holding the evidence insufficient to sustain the findings and judgment of the District Judge, who had the witnesses before him.

Some claim is made that, at the time and before the contract was entered into that McPherrin should act as Fair's agent, McPherrin was negotiating for the purchase of the land for himself. We cannot see what difference that would make. If he made the contract to perform the services for Fair, he was bound by that contract whether he had negotiated for the purchase of the land for himself or not. It may be that the plaintiff in error intends to say that if McPherrin had been negotiating to buy the land for himself it was unlikely that he had agreed to act as Fair's agent. That would be a circumstance for the court to consider in weighing the testimony. However, the circumstance that McPherrin had been negotiating for the land for himself, if it existed, was a two-edged sword. It was plain from the testimony that Fair had negotiated for the land months be-

fore McPherrin had. Fair knew nothing of McPherrin's negotiations when the contract was made. The owner desired to sell the land to Fair rather than to anyone else. So that McPherrin's agreement to act for Fair may have been considered by the court as a means adopted to stop Fair from further negotiations himself, and thus enable McPherrin to get the land by the concealments which he afterwards practiced.

It is also contended by plaintiff in error that the contract establishing the trust was a parol one, and was within the statute of frauds and void because not in writing. He seems to argue that the trust was an express one. In this he is plainly mistaken. The contract established the relationship of agency between Fair and McPherrin and also that of borrower and lender. There was no contract for a trust. The land was to be deeded to Fair—not to McPherrin. The trust resulted, by operation of law, from the wrongful acts of McPherrin. It was a resulting trust. Our statute of frauds has no application to a resulting trust, for such a trust is created by operation of law.—*Kayser v. Maugham,* 8 Colo. 232, 6 Pac. 803; *Walker v. Bruce,* 44 Colo. 109, 97 Pac. 250. Trusts created by operation of law are expressly excepted from our statute of frauds. Secs. 2660, 2661 Rev. St. '08.

Plaintiff in error argues that it was his money with which the land was purchased. We do not say that it would make any difference if it was, but we do say that plaintiff in error is again mistaken. The fifty dollars with which McPherrin bought the land was by him loaned to Fair. Had McPherrin, at the time the loan was made, taken the money from his pocket and handed it to Fair as a loan it would have been the latter's money beyond a doubt. Fair might then have handed the money to McPherrin to take to Council Bluffs to pay for the land. It would have been Fair's money that passed for the deed. When McPherrin offered to advance the money for Fair, and the latter accepted the loan, the money in the hands of the agent, McPherrin, was Fair's

as much as it would have been had it actually passed back and forth between them.—*Reitz v. Humphreys,* 53 Colo. 177, 125 Pac. 518; *Hall v. O'Connell,* 52 Ore. 164, 95 Pac. 717.

Thus the case presented by this record is one wherein an agent for the purchase of land pays the money of his principal for it, takes the title in his own name, and claims it for his own. The authorities are unanimous that, in such a case, a trust results in favor of the principal and the facts out of which the trust arose may be proven by parol. Even *Burden v. Sheridan,* 36 Ia. 125, 14 Am. Rep. 505, upon which plaintiff in error strongly relies, announces this universal doctrine as follows:

"And it has likewise been held in accord with the universal holding of all the authorities that where real estate is purchased by one person with money furnished by another, an implied or constructive trust arises, the former being held as trustee for the latter, and that the facts establishing such trusts may be proved by parol evidence."

In 1 Perry on Trusts, (4th Ed.) sec. 133, it is said:

"If one should advance the purchase money and take the title to himself, but should do this wholly upon the account and credit of the other, he would hold the estate upon a resulting trust for the other."

In sec. 137, the author states that the transaction, out of which such a trust results, may be proved by parol, and that the statute of frauds does not embrace trusts arising by operation of law. Such trusts result, where in various ways, by loan or otherwise, the money of one person, or its equivalent, pays for land, and the title is taken in the name of another.—*Bates et al. v. Kelly,* 80 Ala. 142; *Lounsbury v. Purdy,* 18 N. Y. 515; *Page v. Page,* 8 N. H. 187; *Kelly v. Johnson,* 28 Mo. 249; *Dudley v. Bachelder,* 53 Me. 403; *White v. Sheldon,* 4 Nev. 280; *Weekly v. Ellis,* 30 Kans. 507, 2 Pac. 96.

In *Rose v. Hayden,* 35 Kans. 106, 10 Pac. 554, 57 Am. Rep. 145, a case like the one at bar, in most, if not all, of the material particulars, except that the agent

paid his own money without any agreement before hand to advance it as a loan, the court said:

"The controlling question in this case is not whether the principal advanced the purchase money or not, but it is whether, in equity and good conscience, the agent, who in fact purchased the property with his own money, in his own name, in violation of his agreement with his principal, and in abuse of the confidence reposed in him by his principal, can be allowed to retain the fruits of his perfidy. The weight of authority is, we think, that he cannot." (citing many authorities).

But we are to discuss and determine the case before us with its facts found by the court and sustained by clear evidence and not some other case based on different facts. When this is done the judgment of the District Court appears right under all the authorities, and it is, therefore, affirmed.

*Judgment affirmed.*

Mr. JUSTICE WHITE and Mr JUSTICE BAILEY concur.