## No. 11,387.

### SCHWAB, ET AL. v. WAGELEY.

Decided October 4, 1926.  Rehearing denied November 8, 1926.

Action to recover interest in oil royalties and for an accounting.  Judgment for defendant.

### *Reversed.*

1. TRUSTS—*Resulting—Fraud.*  Where under fraudulent representations of defendant, plaintiffs advanced $10,000 for the purchase of a one-half interest in certain oil royalties, and defendant purchased the whole interest for the amount so advanced, taking the transfer in his own name, it is held, under the facts disclosed, that plaintiffs could treat the defendant as holding the royalty interest as their trustee, and that they were entitled to the entire interest acquired.

2. SALES—*Joint Ownership.*  One of several joint owners of oil royalties could not, without authority of his associates make an exchange of the royalties for other property.

3. FRAUD—*False Representations.*  Where defendant by false representations obtained an interest in property purchased with money advanced by plaintiffs, he will not be allowed to take advantage of the trust and confidence which they imposed in him, nor be permitted to penalize them for their credulity, by retaining the fruits of his fraud.

*Error to the District Court of the City and County of Denver, Hon. Henley A. Calvert, Judge.*

Mr. WILLIAM H. DICKSON, for plaintiffs in error.

Mr. OTTO FRIEDERICHS, for defendant in error.

*Department Three.*

MR. JUSTICE CAMPBELL delivered the opinion of the court.

HARRY E. Schwab, Henry T. Meyer and Charles E. Meyer brought this action against D. S. Wageley, doing

business as D. S. Wageley and Company. The complaint alleges that the defendant in the City of Denver was engaged as a broker in the business of buying and selling oil stocks and royalties or interests in oil productions. In the month of April, 1920, he represented to the plaintiff, Charles Meyer, that he, defendant, had an opportunity to buy a 1/64 royalty interest in the Middleton royalty, out of the Ohio Oil Company's Trapshooter oil lease in the Rock Creek oil field of Carbon county, Wyoming, for the sum of $25,000, and told Meyer that if he and his co-plaintiffs would put up one-half the amount, or $12,500, towards the purchase price, he, defendant, would put up the other one-half and they would purchase the same jointly as an investment. That Meyer for himself and associates, believing the representations to be true, raised the sum of $10,000 in money which they gave to the defendant, the remaining $2,500 of their share defendant agreed to advance and to reimburse himself out of the royalties thereafter earned and paid. That the defendant represented to the plaintiffs that the property could not be purchased for less than $25,000 and it was a good investment at that price. That these representations of the defendant, all of which plaintiffs believed to be true, were false and fraudulent and known to be so by defendant and that the defendant bought the entire royalty interest in question for the sum of $10,000; that the defendant's representations to the plaintiffs were for the purpose of deceiving them, and did deceive them, and obtaining for himself one-half interest in the royalty for nothing; that the royalty was purchased by the defendant and title thereto taken in his own name, the title to the plaintiff's one-half being so held in part as security for $2,500, the deferred payment of the plaintiffs; that the defendant has collected on the royalty more than the sum of $5,000. By reason of the foregoing facts the plaintiffs claim to be, in equity, the owners of and entitled to, the possession of the entire royalty interest and

asked for the transfer thereof by the defendant to them, and for an accounting of moneys received by him on the royalty.

In his answer the defendant admits that plaintiffs paid to him on this deal the sum of $10,000, and denies the alleged fraud. In a separate defense the defendant alleges that he was the owner of the royalty interest at the time he sold one-half of it to plaintiffs and that he merely sold a one-half interest therein to them and denies that he ever agreed to purchase the royalty interest jointly with the plaintiffs, and further alleges that after the purchase, and prior to some time in November, 1920, plaintiffs exchanged and traded to him their interest in this royalty and transferred the same to him for capital stock of the Hutton Lake Oil & Gas Company, which the defendant delivered to them, and they accepted the stock in full payment and exchange for their royalty interest. The affirmative matters of the defense were denied in the replication. Trial was to the court without a jury and the court found for the defendant and dismissed the action. Plaintiffs are here to review that judgment.

We have read with care the evidence in this case. We are unable to discover any legal ground upon which the judgment can be sustained, even upon the evidence of the defendant himself. That the plaintiffs gave to the defendant $10,000, and that the defendant paid for the royalty interest only that amount, are clearly disclosed by the evidence and there is no contradiction by the defendant. The plaintiffs' theory, which defendant takes issue with, is that they entered into a contract with the defendant whereby the plaintiffs and the defendant were jointly to purchase this royalty for $25,000, the respective parties to the agreement each to pay one-half, and to get one-half of the thing purchased. The defendant's theory in his answer is that he was the owner of the royalty interest at the time the deal between him and the plaintiffs was made, whatever it was, and that he, the de-

fendant, was merely selling to the plaintiffs one-half interest in a royalty which he owned. The evidence of the defendant himself and of his books of account are inconsistent with this theory and claim. Only indirectly does the defendant seek to disprove the allegations of the complaint and the testimony of the plaintiff, Charles Meyer, that the parties were to make a joint purchase of this royalty. As we read the record, it shows clearly that the defendant did not own the royalty at the time the plaintiffs advanced him this money, and it also shows that the $10,000, which they did advance, constituted the sole source of the payment which the defendant made for the entire royalty interest in controversy. It was the plaintiffs' money, and not the money of the defendant, that enabled the defendant to take up the option. The defendant's own books show that the royalty interest was transferred to him and taken in his own name after the plaintiffs had advanced to him the full amount of money required to take up the option. In making the full payment to the grantor of the royalty interest defendant paid partly in money, $7,500, and partly in stock of the Hutton Oil Company but this stock was a mere substitution of the stock of the company for $2,500, instead of an equal amount of money which he had already received from the plaintiffs. So we say that as the foregoing facts which we have outlined sufficiently appear, even from the testimony of the defendant himself, in the absence of any evidence in support of the affirmative defenses of the answer to the contrary, the plaintiffs may treat the defendant as holding this royalty interest as their trustee, and under the doctrine of constructive trusts the plaintiffs are entitled to this royalty interest, since, as the result of the defendant's fraudulent conduct, he secured from the plaintiffs the entire purchase price of the royalty interest toward which the defendant contributed nothing at all unless it be his services and expenses that might have been incurred in securing the option. *Kayser*

*v. Maugham,* 8 Colo. 232, 6 Pac. 803; *Hall v. Linn,* 8 Colo. 264, 5 Pac. 641; *Walker v. Bruce,* 44 Colo. 109, 97 Pac. 250; 39 Cyc. 169 et seq.; *Young v. Hinds,* 68 Colo. 164, 188 Pac. 739. Even though the title to this royalty was taken in the name of the defendant, the plaintiffs furnished the money to purchase the same and in equity are entitled to it. The testimony is undisputed that the plaintiffs trusted implicitly the defendant in this transaction and believed him to be honest and that the representations he made were true. The relation between these parties may not be strictly a fiduciary relation but the defendant had secured the confidence of the plaintiffs and has abused it. Where, however, fraud and misrepresentation are so convincing, as we think they are in this case, under the doctrine in *Mattern v. Canavan,* 3 Cal. App. 493, 86 Pac. 618, as the defendant represented to the plaintiff that he could purchase this royalty for $25,000 and thereafter took up the option for $10,000, the entire amount of which was paid to him by the plaintiff through fraudulent representations, which were untrue, there is a resulting trust and plaintiff is entitled to the entire interest. See also *Hodge v. Twitchell,* 33 Minn. 389, 23 N. W. 547; *Merino v. Munoz,* 38 N. Y. Supp. 678; *Lyon v. Taylor,* 49 Ill. App. 639.

But the defendant says that after this royalty interest was acquired and title to the whole thereof was taken in his name, even if it was owned one-half by himself and one-half by the plaintiffs, they entered into an agreement whereby the plaintiffs agreed to and did exchange their undivided one-half with the defendant for a transfer by the latter to the plaintiffs of a large block of the capital stock of the Hutton Lake Oil and Gas Company, which stock was delivered to and accepted by the plaintiffs in lieu of their royalty interest. The evidence is clear to the point that at the time of this alleged exchange, which was about six months after the royalty was acquired, the Hutton stock had no market value whatever, and both

plaintiffs and defendant knew it, and that the Hutton well from which oil was expected had been shut down before plaintiffs advanced their money, and the company in charge of development considered the well as of no value, had shut down work, and no further development thereof has been made. The defendant admits the stock had no market value but he says that, for a reason which he does not explain, it had some value to him. There is not a particle of evidence that Charles E. Meyer had any authority whatever to dispose of the royalty interest of his co-defendants, Harry E. Schwab and Henry T. Meyer, and there is no claim or testimony by defendant that Charles had any authority to act for them in such an exchange other than the fact that Charles represented them in the purchase. Charles Meyer, while he admits that he signed receipts for the stock that indicate an exchange, says he did not read such statement therein, and says that the defendant told him at the time, and the defendant does not deny this statement, as we read the record, that he, defendant, did not wish to retain this oil stock in his own name, because he was the official broker of the company and might be charged with taking advantage of inside information he had concerning the oil property in disposing of this stock and so transferred it to them to hold for him. It may be said that, since the trial court found against the plaintiffs generally, this is equivalent to a finding that Charles Meyer's testimony was not believed. However that may be, we are satisfied, by a careful reading of defendant's own testimony, that no such an exchange or trade by him of worthless stock in the Hutton Oil Company was made, or that the plaintiffs ever supposed that any such exchange was thought of. Aside from this Charles Meyer had no authority to make the exchange as his was a joint interest with his co-plaintiffs. In its oral findings the trial judge seemed to be of the opinion that the theory of the plaintiffs and their testimony were so unusual in business affairs that it was

almost, if not quite, incredible. We do not so view the testimony in the light of the full confidence which the plaintiffs had in the defendant. It may be true that it was unbusinesslike of them to advance to the defendant $10,000 in money without written evidence of the same, or the purpose for which it was to be used, and in permitting the defendant to take, and for a long time retain, title in himself. When, however, these plaintiffs, after many efforts, were unable to have their share in the royalty transferred to them by the defendant, and were told by him that they no longer had any royalty interest but had parted with it for worthless stock, they promptly acted. As soon as they discovered for themselves that the defendant was denying their right to an interest in this royalty, they consulted counsel and sought to enforce their rights. On the assumption that the parties are equally honest, the defendant should not be allowed to take advantage of the trust and confidence imposed in him by the plaintiffs, or be permitted to penalize them for their credulity. Before the action was brought the plaintiffs, by Charles E. Meyer and by a Mr. Hudson, who had also bought another 1/64 royalty interest in the Middleton royalty and paid for it, and had been unable to get a transfer of his interest, endeavored to reach an amicable settlement, and the parties did reach an agreement which was not reduced to writing, whereby the defendant was to transfer to the plaintiffs the royalty interest they claimed, upon the return by them to defendant of the Hutton Oil stock and a payment of about $2,200. Before closing the deal, the defendant required that all the parties interested in the royalties and the Hutton Oil stock should sign a power of attorney empowering their representative to complete the transaction on the basis agreed upon. Before the signatures to this power of attorney could be secured a number of months had elapsed and when Hudson, the attorney in fact, named in the instrument, presented the same to the defendant for

completion of the deal, the latter increased by $1,200, the amount of money that plaintiffs must pay before he would convey the royalty interest, whereupon negotiations ceased and this action was brought. Just what the decree in this case should be, we shall not now determine. We are satisfied that the judgment of the trial court is unjust and not supported by the evidence.

It, therefore, must be and is set aside and the cause remanded with instructions to the trial court to vacate its judgment; further proceedings, including an accounting, not to be inconsistent with the views expressed in the opinion.