572 P.2d 1214 (1977)
P. E. PAGE, a/k/a Paul Page, Plaintiff-Appellee,
v.
Morton J. CLARK and Alice R. Clark, Defendants-Appellants.
No. 76-048.
Colorado Court of Appeals, Division III.
September 1, 1977.
Rehearing Denied October 6, 1977.
Certiorari Granted December 12, 1977.
*1215 Richard W. Johnston, Aurora, William M. Caldwell, Denver, for plaintiff-appellee.
Dennis R. Frohlich, Boulder, for defendants-appellants.
SMITH, Judge.
Plaintiff, Paul Page, brought an unlawful detainer action against defendants, Morton and Alice Clark. Defendants counterclaimed for reconveyance of the property, alleging that plaintiff held title as a constructive trustee for defendants. On appeal by defendants we reverse the trial court's dismissal of the counterclaim.
Plaintiff and defendants had apparently been friends and had engaged in informal business dealings for some time prior to the transfer. On March 13, 1975, because of defendants' poor financial circumstances, defendants conveyed the east portion of their property to plaintiff in return for $1,000 in cash and plaintiff's assumption of the then existing loans on the property. Contemporaneously, there was an oral agreement between the parties that plaintiff would hold legal title subject to defendants' right to repurchase the property by paying plaintiff the $1,000 plus any expenditures that plaintiff had incurred on the property up to the date of repurchase. On April 3, 1975, defendants conveyed the remainder of the subject property to plaintiff, reconfirming the earlier oral agreement and entering into an additional oral arrangement which granted defendants the *1216 right to reside on the property rent free. On June 25, 1975, defendants' residence burned down, and on June 30, 1975, plaintiff served defendants with a notice to quit or vacate, which resulted in this action for unlawful detainer.
The trial court dismissed plaintiff's action, as well as defendants' counterclaim. Although acknowledging the existence of an oral agreement by plaintiff to reconvey to defendants, the court held such agreement to be unenforceable under the Statute of Frauds. However, the court held that the oral agreement to allow defendants to reside on the property rent free was enforceable because it was part of the consideration for the transfer.
The court further gave either party the option of terminating the tenancy upon 60 days prior notice, and ruled that upon termination, plaintiff would be required to pay defendants for the unused portion of the tenancy. The court then determined that the difference between the property's $23,000 market value and the amount that plaintiff had paid for the property was the value of the tenancy to defendants.
Defendants appeal on the grounds that the trial court erred in failing to impose a constructive trust and that it applied the wrong evidentiary standard by requiring that defendants prove their case by clear and convincing evidence rather than by a preponderance of evidence. Plaintiff asserts that this court has no jurisdiction to decide the case because defendants' motion for new trial was untimely.
Addressing the jurisdictional issue first, we note that the trial court entered its original judgment on November 20, 1975. It is conceded that defendants failed to make a timely motion for new trial based on the original date of entry of judgment. However, on November 28, 1975, in compliance with C.R.C.P. 59(e), plaintiff filed a motion to amend the judgment on the ground that he had paid $18,000 consideration to defendants for conveyance of the parcels, rather than the $17,000 found in the original order and judgment. This change in the judgment, if granted, would affect the value of the tenancy. On January 13, 1976, the trial court granted plaintiff's motion to amend.
Under these circumstances, the trial court's judgment, entered on November 20, 1975, was not the final judgment in the case. Sarno v. Sarno, 28 Colo.App. 598, 478 P.2d 711 (1970). Since the judgment, as amended, represented a substantial change, it did not become final until January 13. The time for the filing of the motion for a new trial therefore did not begin to run until that date. Thus, defendants' motion for new trial on January 22, 1976, was within the 10 day limit. See 6 J. Moore, Federal Practice ¶ 59.09 at 59-202 (1976-77 Supp.); Cornist v. Richland Parish School Board, 479 F.2d 37 (5th Cir. 1973). The trial court denied defendants' motion, and we hold that the case is properly before us on review.
Turning now to the substantive issues, we find defendants' principal contention is that a constructive trust should have been imposed on the property in their favor, based on the oral agreements of the parties made contemporaneously with the conveyances. The record discloses that the trial court was unwilling to impose a constructive trust, because it found no evidence of fraud, or violation of a fiduciary or other confidential relationship. It did note, however, that plaintiff's agreement to reconvey the property may have influenced the defendants to sell in the first instance, even though the evidence was insufficient to establish that plaintiff's promise was coupled with any kind of contemporaneous intention not to fulfill the agreement.
Although the trial court found that both agreements had been proved, neither party nor the court considered the theory that a resulting trust may have arisen from the actions of the parties.
This case, therefore, poses a recurrent problem for the bench and the bar: that of dealing with the occasionally imponderable distinction between resulting and constructive trusts.
*1217 In general terms, a resulting trust has been defined as one which is devoid of fraud or constructive fraud and "`which arises where the legal estate in property is disposed of, conveyed, or transferred, but the intent appears, or is inferred [from all the surrounding circumstances] that the beneficial interest is not to go or to be enjoyed with the legal title.'" Botkin v. Pyle, 91 Colo. 221, 14 P.2d 187 (1932). Constructive trusts have been broadly defined as those trusts which "`are raised by equity in respect of property which has been acquired by fraud, or where, though acquired originally without fraud, it is against equity that it should be retained by him who holds it.'" Botkin v. Pyle, supra. See First National Bank v. Harry W. Rabb Foundation, 29 Colo.App. 34, 479 P.2d 986 (1970).
The strongest rationale for both types of implied trusts lies in a desire of the courts to avoid the harsh results of the Statute of Frauds in those cases in which oral agreements or assumptions of good faith formed the bases for particular dispositions of property. See Vandewiele v. Vandewiele, 110 Colo. 556, 136 P.2d 523 (1943); Hall v. Linn, 8 Colo. 264, 5 P. 641 (1885); McPherrin v. Fair, 57 Colo. 333, 141 P. 472 (1914). G. Bogert, Trusts and Trustees § 452 (2d ed. 1964).
In more tangible terms, the classical resulting trust cases involve situations in which property is purchased in the name of one person but the consideration comes from another (purchase money mortgage); where a trust is declared as to part of the property and nothing is said as to the rest; or where an express trust fails. Walker v. Bruce, 44 Colo. 109, 97 P. 250 (1908); McPherrin v. Fair, supra. See G. Bogert, supra, § 451 et seq. Ostensibly a true resulting trust cannot arise unless the party in whose favor it is invoked voluntarily placed the title in the hands of another. G. Bogert, supra, § 458.
The classical constructive trust, on the other hand, involves fraud, duress, mistake, abuse of confidence, or other unconscionable conduct. Springing entirely from an unjust enrichment theory, it does not depend in any way on the intent of the settlor, but rather on an injustice at the hands of the party holding the property. See Botkin v. Pyle, supra; Kayser v. Maughan, 8 Colo. 232, 6 P. 803 (1885); Bogert, supra, § 451; 5 A. Scott, Trusts §§ 462.1, 462.2 (3d ed. 1967).
As this court noted in First National Bank v. Harry W. Rabb Foundation, supra, resulting trusts carry into effect the presumed intent of the parties, while constructive trusts defeat the intentions of one of them.
The above distinctions appear to be reasonable in the abstract, and they work for those fact situations at either extreme which clearly fall within one or the other of the categories. But they prove deceptively elusive in application to the many cases in which the courts in the exercise of their equitable jurisdiction should decree a trust.
One major problem is that the point of view taken, or the time frame chosen, by a court for scrutinizing a given fact situation will likely determine the label that is eventually applied. The usual rule for resulting trusts is that the transaction itself is examined for evidence of an intention by the grantor not to part with his beneficial interest. Botkin, supra; First National Bank v. Campbell, 2 Colo.App. 271, 30 P. 357 (1892) ("This is a sine qua non. The trust must arise at the time the title is transferred."). The same fact situation which gives rise to a resulting trust may also legitimately be labeled one which justifies a constructive trust, if the court chooses to concentrate on an injusticea broken confidential relationship or the likewhich arose after the original vesting of title, O'Byrne v. McNeill, 90 Colo. 226, 7 P.2d 956 (1932), even though the court might decide to relate the wrongdoing back to the date of the transaction. See A. Scott, supra, § 462.4. Occasionally, a court has conspicuously woven both approaches into one opinion. See e. g., Walker v. Bruce, supra.
A second complication arises from the fact that the court's decision to declare a resulting trust may be based either on a *1218 conclusion that there was no unjust element, such as fraud, involved in the case, or on a more perfunctory conclusion that the fact situation closely resembles a classical resulting trust case, such as a purchase money mortgagethis despite clear evidence of fraud in the inducement. Compare First National Bank v. Harry W. Rabb Foundation, supra, with Schwab v. Wagely, 80 Colo. 199, 250 P. 556 (1926).
Third, despite claims to the contrary, the concept of unjust enrichment simply cannot be restricted to the traditional constructive trust cases. Where one party is claimed to be holding the property of anotherwhether through the original intentions of the parties, or fraud, or a combination of the twothe potential for unjust enrichment is an inescapable element in the problem, regardless of the manner in which the court ultimately articulates it. Therefore, cases which attempt to define a constructive trust as one for which "it is against equity that it should be retained by him who holds it," Botkin, supra, tend to blur rather than clarify the distinction.
From the examination of Colorado cases it appears that the dividing line between resulting and constructive trusts has, in fact, become a transparent one. Many cases involving elements of both have been decided under the aegis of one. E. g., McPherrin v. Fair, supra; O'Byrne v. McNeill, supra; Schwab v. Wagely, supra. Other decisions, while alluding to both, have reached their result in such a way as to be traceable to neither. Hahn v. Pitts, 118 Colo. 173, 193 P.2d 716 (1968); Von Trotha v. Bamberger, 15 Colo. 1, 24 P. 883 (1890).
In brief, the "conscience of equity" has become clouded by labels that are difficult to pin down and discuss in a cogent manner.
We have therefore determined to deal with this case and others like it based upon whether the equitable responsibilities of the court require that a trust be decreed, irrespective of how that trust is denominated. The underlying theories, of course, remain unchanged. It is hoped that the emphasis which has heretofore been placed on labels, instead of on a relationship between the parties, will diminish, along with the very real possibility that appropriate relief may be denied because the proof in a given case does not precisely fit one theory to the exclusion of the other.
We recognize that our de-emphasis of the traditional labelling process runs counter to the advice of some commentators who maintain, without explanation, that the distinction should be retained intact, and that a blurring of the lines would yield an "equitable result . . . at the expense of accurate legal theory." G. Bogert, supra, § 458 (2d ed. 1964); see 5 A. Scott, Trusts § 404.2 (1967). We are constrained to observe, in response, that equity had its birth in the unjust results that arose from the rigid insistence of the law upon "accurate legal theory" and that the value of the accuracy or precision of a legal theory should be measured by whether its application deals a just and equitable result. The practical differences between the two trust theories are conceded to be almost nonexistent today and are limited substantially to statute of limitation problems in some states. G. Bogert, supra, § 458. In Colorado, no limitation problem exists and any sense that such a difference might result from a stiffer burden of proof applied to the more fraud-oriented constructive trust cases was eliminated by the state legislature in 1973. Section 13-25-127(1), C.R.S.1973: "[T]he burden of proof in any civil action shall be by a preponderance of the evidence."
The facts of the case before us reveal that plaintiff, who was aware of the defendants' financial status and the arrearages existing on both notes secured by that parcel, agreed to assume the existing encumbrances amounting to some $18,000, pay all expenses of transfer and assume responsibility for the payment of existing deficiencies on the two deeds of trust. Also, as noted earlier, the trial court found that defendants were influenced to sell the property based on plaintiff's promise to reconvey to them. Defendants offered to reimburse plaintiff before and during trial in *1219 accord with the oral agreement. Finally, there was the evidence that the market value of the property at the time of sale was $23,000 contrasted with the $18,000 purchase price. Instead of the "rent free" arrangement being part of the consideration for the transfer, it rather demonstrates the parties' intention that defendants retain their beneficial interest in the property, until such time as they could reimburse plaintiff for his assumption of the mortgage and the moneys he advanced. Consequently, we hold that the Statute of Frauds is not applicable because an equitable trust had arisen between the parties, as demonstrated by a preponderance of the evidence. See § 38-10-107, C.R.S.1973. We further hold that the trial court should have so decreed. C.R.C.P. 54(c).
The judgment is accordingly reversed and the cause remanded with directions to decree a trust and for the entry of remedial orders consistent herewith.
RULAND and BERMAN, JJ., concur.