579 P.2d 638 (1977)
In re the MARRIAGE OF Beth HEINZMAN, Appellant, and
William G. Heinzman, Appellee.
No. 76-691.
Colorado Court of Appeals, Div. II.
December 15, 1977.
Rehearing Denied January 12, 1978.
Certiorari Granted May 30, 1978.
*639 Burton L. Cawthorne, Denver, for appellant.
Jack O. Robinson, Boulder, for appellee.
STERNBERG, Judge.
Beth Lovato and William Heinzman lived together from 1969 to 1973 with some brief periods of separation. William was married at the time he began living with Beth but obtained a divorce in 1970. In the fall of 1970, William purchased the home in Boulder which Beth had been leasing. The court found, on supporting evidence, that Beth and William had become "engaged" and had agreed to marry. Thereafter, William deeded the home to "William Heinzman and Beth Lovato as joint tenants." The parties lived there until June 1973, when Beth left the state.
In October 1973, Beth petitioned the Boulder District Court to dissolve what she claimed was her common law marriage to William and requested a property settlement. The parties presented testimony on the common law marriage issue and on the issue of property division. The court ruled there was no common law marriage, and that judgment is not appealed. The court ordered the parties to submit briefs on the property division question. They did so, and neither party questioned the power of the court to proceed. Therefore, the property division matter was tried by consent. See C.R.C.P. 15(b) and 54(c). After considering the briefs, the court ordered the reconveyance of the Boulder residence to William. Beth appeals this order and we affirm.

I.
Beth alleges that insufficient evidence was presented to the court to support its findings that the gift of real property was made during the parties' engagement period and that she was at fault in breaking the engagement. Although the facts were in dispute, testimony was presented that supported the court's conclusion that, before the conveyance of the house, Beth had *640 agreed to marry William ceremonially, that he had bought her an engagement ring, and that Beth had later changed her mind. These factual determinations may not be disturbed on review, because there was sufficient evidence to support them. Linley v. Hanson, 173 Colo. 239, 477 P.2d 453 (1970).

II.
The trial court found, in effect, that William would not have given the joint interest in the home to Beth if he had not expected her to marry him formally at some future date and that Beth had broken the engagement.[1] These circumstances warrant the imposition of an equitable trust. See generally Page v. Clark, Colo. App., 572 P.2d 1214 (announced September 1, 1977); First National Bank v. Rabb, 29 Colo.App. 34, 479 P.2d 986 (1970); 5 A. Scott, Trusts § 462.2 (3d ed. 1967). In Beatty v. Guggenheim Exploration Co., 225 N.Y. 380, 122 N.E. 378 (1919), after characterizing trusts of this type as "the formula through which the conscience of equity finds expression," Judge Cardozo explained the doctrine as follows:
"When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee."
In Semenza v. Alfano, 443 Pa. 201, 279 A.2d 29 (1971), a case involving facts similar to those here, after quoting this passage from Beatty, the court said, "[t]he receipt of an ante-nuptial gift in contemplation of a marriage which never takes place is just such a circumstance." See also Sharp v. Kosmalski, 40 N.Y.2d 119, 386 N.Y.S.2d 72, 351 N.E.2d 721 (1976); Guffin v. Kelly, 191 Ga. 880, 14 S.E.2d 50 (1941). Consequently, to avoid unjust enrichment here, based upon the factual findings of the trial court, Beth, an equitable trustee, must reconvey her interest in the home to William.

III.
Beth asserts that several sections of the Colorado Statute of Frauds, §§ 38-10-106, 38-10-108, and 38-10-112, C.R.S.1973, prevent William from proving the conditional nature of the deed because that condition was not set forth in writing signed by Beth. This contention is without merit. The Statute of Frauds has no application to cases involving equitable trusts. Vandewiele v. Vandewiele, 110 Colo. 556, 136 P.2d 523 (1943); Semenza v. Alfano, supra; 5 A. Scott, Trusts § 406 (3d ed. 1967).

IV.
Colorado's "Heart Balm" statute, § 13-20-202, C.R.S.1973, provides that all claims for relief for breach of promise to marry, alienation of affection, criminal conversation, and seduction are abolished. Beth claims that because William's argument is based upon Beth's breach of her promise to marry him, that statute bars his assertion that he should recover the Boulder property. We disagree.
The predominant view is that Heart Balm statutes should be applied no further than to bar actions for damages suffered from loss of marriage, humiliation, and other direct consequences of the breach, and should not affect the rights and duties determinable by common law principles. Gill v. Shively, supra; Norman v. Burks, 93 Cal.App.2d 687, 209 P.2d 815 (1949); Beberman v. Segal, 6 N.J.Super. 472, 69 A.2d 587 (1949); Pavlicic v. Vogtsberger, 390 Pa. 502, 136 A.2d 127 (1957). See also Comment, California Reopens the *641 "Heart Balm" Action, 9 Stan.L.Rev. 406 (1957); H. Clark, Domestic Relations § 1.5 (1968).
Public policy in Colorado follows this view. Section 13-20-201, C.R.S.1973, contains a legislative declaration that causes of action for breach of promise to marry have been abolished because such actions have been gravely abused by people who have been unjustly enriched by bringing specious legal claims which allow the recovery of damages for broken engagements.
The Heart Balm statute cannot be relied upon to disallow the recovery of a conditional gift, particularly when Beth, the donee, broke the engagement. To hold otherwise would encourage the kind of unjust enrichment the statute was designed to prevent.
Beth's other contentions have been considered and found to be without merit.
Judgment affirmed.
ENOCH, J., concurs.
COYTE, J., dissents.
COYTE, Judge, dissenting.
I dissent.
Neither the trial court nor the parties raised the possibility of imposing a trust of any kind on the property, yet the majority's result is premised upon the imposition of an equitable trust. The situation here does not meet the criteria for the imposition of either of the traditional types of equitable trust.
First, since there exists no evidence of fraud or other wrongdoing by Beth that led to her obtaining an interest in the property, a constructive trust is not justified. See First National Bank v. Harry W. Rabb Foundation, 29 Colo.App. 34, 479 P.2d 986.
Second, the record is devoid of any indication that the parties ever intended Beth to hold only legal title and eventually to reconvey that title to William; thus, the imposition of a resulting trust is not warranted, such trusts being only for the purpose of carrying out the presumed intent of the parties. See First National Bank v. Harry W. Rabb Foundation, supra.
Nor should the "equitable responsibilities" of this court, see Page v. Clark, Colo. App., 572 P.2d 1214, be extended to allow a donor of real property to recover that property merely because the donee follows a different course of action than anticipated by the donor. The power to create an equitable trust is potent and precious. It should not be used to ease the disappointment of every donor whose plans fail to materialize.
Especially here, I find it inappropriate that the majority should invoke the equitable powers of the court to console William. Substantial evidence indicates that this conveyance was made by William against the advice of counsel and for the purpose of keeping the property out of the reach of William's former wife. Equity should accord him no special consideration.
Absent the existence of an equitable trust, the Statute of Frauds would bar the enforcement of any oral condition attached to the deed. See § 38-10-112(1), C.R.S. 1973; Williams v. Hankins, 75 Colo. 136, 225 P. 243. Thus, I would reverse the judgment as to the disposition of the property, which should be divided equally between the parties, with the payment of the incumbrance recently placed on the property for the sole benefit of William charged against William's interest in the property.
NOTES
[1] For cases supporting the return of property as a gift made during the engagement period in contemplation of subsequent ceremonial marriage, when the marriage does not take place through no fault of the donor, see Gill v. Shively, 320 So.2d 415 (Fla.App.1975); DeCicco v. Barker, 339 Mass. 457, 159 N.E.2d 534 (1959); Shaw v. Christie, 160 S.W.2d 989 (Tex.Civ.App. 1942); Guffin v. Kelly, 191 Ga. 880, 14 S.E.2d 50 (1941). See also Annot., 46 A.L.R.3d 578 at 607-611; 38 C.J.S. Gifts § 61.